GEORGE J. ROBINSON v. ALFRED E. HAWES.

*Attorney and client—Lien for fees—Wrongful detention of moneys collected.*

1. An attorney has a lien upon the money and papers of his client in his possession to secure payment for his professional services, not only in the suit to which they pertain but in other suits. But the lien is strictly limited by the amount due for the services.

2. An attorney who neglects to comply within a reasonable time with his client's demand for money and papers belonging to the client but held by the attorney, is guilty of professional misconduct, and is liable as for a misdemeanor, or in an action of tort, except so far as the papers and moneys are subject to the attorney's lien for his professional services.

3. Where a client sues his lawyer for moneys collected, and arrests him on a capias ad respondendum, evidence of the facts set forth in the affidavit for the capias, and tending to show that the money has been withheld, is admissible in support of the action.

4. The relation of attorney and client is one of confidence based upon the ability and integrity of the attorney; and the attorney cannot withhold money belonging to his client in order to make the latter agree to unreasonable terms for professional services rendered.

5. An attorney's retention in good faith of moneys held by him for his client, pending the settlement of an honest disagreement between them as to the amount justly due for the attorney's services, is not professional misconduct or a violation of professional duty, and does not make him liable in trover to the client.

Error to Wayne. (Chambers, J.) Jan. 15.—Jan. 28.

TROVER (with special counts). Plaintiff brings error. Reversed.

*O. F. Hunt* and *Griffin & Warner* for appellant, cited as bearing on professional misconduct, *Ridder v. Whitlock* 12 How. Pr. 208; *Wallace v. Castle* 14 Hun 106; *Standard Sugar Refinery Co. v. Dayton* 70 N. Y. 486; *Williams Mower etc. Co. v. Raynor* 38 Wis. 119; *Cotton v. Sharpstein* 14 Wis. 226; *Matter of Bleakley* 5 Paige 311; *Stage v. Stevens* 1 Den. 267; *Bowling Green Savings Bank v. Todd* 52 N. Y. 489; *People v. Palmer* 61 Ill. 255; *In the Matter of Mills* 1 Mich. 392; *In the Matter of Wool* 36 Mich. 299; *McCarthy's Case* 42 Mich. 71; *Cobb v. Judge of Superior Court* 43 Mich. 291.

*C. H. Freeman* and *John Atkinson* for appellee.

CHAMPLIN, J.  This is a controversy between attorney and client.  In 1876 Robinson employed Hawes to perform legal services for him, at a stipulated price per day and disbursements and expenses.  Under this arrangement defendant attended to a large amount of litigation in which plaintiff was directly and indirectly interested, when in August, 1883, he received into his hands, as attorney for plaintiff, the sum of $5922.25, being the avails of a suit compromised and settled by the parties, and refused to pay over to the plaintiff the sum so received, but offered to and did pay over $3722.25, retaining $2200, which he claimed he had a right to retain and apply on his charges for services in that and another suit, called the Sanborn suit.  He afterwards made out and presented a bill for professional services, which he claimed he

had performed for defendant, amounting in the aggregate to $6174.37, in part payment of which he claimed he had applied the $2200, leaving a balance claimed to be still due him of $3974.37. Plaintiff demanded the whole amount of $5922.25, and also the said sum of $2200, and on defendant's refusal to pay over, he brought this action. The suit is commenced by capias ad respondendum, upon which defendant was arrested and held to bail in the sum of $500. The declaration contains three counts. The first alleges that defendant was a practicing attorney, and had been employed by the plaintiff in his professional capacity, and as such attorney, and by virtue of such professional employment, he received for and on behalf of the plaintiff $5922.25, which sum it thereupon became the duty of defendant to pay over to plaintiff; that although often requested so to do, defendant had not paid to plaintiff the said sum of money, or any part thereof, but has wrongfully and unjustly neglected and refused, and still neglects and refuses, and has converted and appropriated the same to his own use.

The second count is the same as the first, except that it alleges it to be the duty of defendant to pay the sum to plaintiff on demand, and that afterwards, and on the 15th of August, 1883, the plaintiff demanded of defendant the said sum of money, and that defendant refused compliance. The third count is in trover for converting $5922.25. The plea was the general issue.

On the trial the plaintiff produced himself as a witness, and counsel for plaintiff offered to prove by him the facts and circumstances set forth in the affidavit for the writ of capias, and he did not propose to show any other facts and circumstances in support of plaintiff's case. Defendant's counsel then objected to the evidence proposed to be given by said offer as immaterial, and not sufficient to make out a cause of action against defendant under the declaration. The court sustained the objection, to which ruling the plaintiff excepted, and the court then directed the jury to render a verdict for the defendant, which was done. The shape in which the case was finally disposed of was the same as if the

witness had been produced upon the witness stand, and had testified to the facts and circumstances detailed in the affidavit, and the defendant had thereupon demurred to the evidence, and the court was called upon to decide, as matter of law, whether from the evidence sufficient facts appeared to warrant the jury in finding a verdict for the plaintiff.

It was proper for the court to consider the facts and circumstances stated in the affidavit, and also to draw from such facts and circumstances all inferences which a jury would be justified in drawing from the facts and circumstances proved.

The facts shown by the affidavit were that a special agreement was made between the plaintiff and the defendant, when plaintiff engaged the professional services of defendant, as to the compensation to be paid for such services; that he had settled with and paid defendant in full for all services, excepting the following: (1) A balance of $60 for services in the suit, in the Supreme Court, of *Robinson v. Bennett* 50 Mich. 560; (2) charges claimed by defendant, but not admitted by plaintiff, in two suits of *Pack v. Duffield*, and three suits of *Pack v. Blanchard*, aggregating $260; (3) charges of defendant, but not admitted by plaintiff, in the suit of *Robinson v. Duffield*, of $65; and (4) charges of defendant, in the so-called Maynard compromise, of $298.05; making a total of $683.05; that after the decision of the Supreme Court the entire controversy involved in the litigation was compromised and settled between plaintiff and Hon. A. B. Maynard, one of the counsel for Bennett, by which Maynard agreed to pay plaintiff the sum of $5922.25; that defendant received said sum of $5922.25, paid by Maynard in his professional capacity as attorney of plaintiff on the 15th day of August, 1883; that said defendant thereupon pretended that he had a right to retain of said amount the sum of $2200, which plaintiff denied.

The facts above stated show that, at the utmost, according to the affidavit, the defendant's claim did not exceed $683.05 against plaintiff, and that amount would be the greatest sum he would be entitled to retain out of the moneys received by him, conceding for the purposes of this question that he

could retain money received from one suit to apply upon services rendered in others. The facts, therefore, shown by the affidavit, prove clearly and without question that defendant retained and refused to deliver to plaintiff at least the sum of $1516.95 more than he had a right to do. It needs no argument to show that such conduct was improper. It was misconduct in his professional employment, for which an action will lie sounding in tort, based upon neglect or violation of professional duty; and the evidence offered was admissible, and tended to support the first two counts of the declaration. An attorney has an undoubted right to a lien upon the money or papers of his client which have come to his possession, derived from, or pertaining to, the suit in which his legal services were rendered, to secure payment, not only for his services in that suit, but also for all professional services rendered his client in other suits; but where he receives money, he has no lien upon or right to retain any sum beyond the amount owing him from his client for professional services, and it is clearly his duty to pay over to his client, on demand, any sum he has received beyond what his client owes him for such services. Indeed, the statute makes such neglect or refusal of the attorney to pay over moneys collected or received for his client or other person, within a reasonable time after demand, a misdemeanor and punishable by imprisonment or fine. How. Stat. § 9152.

In a case where there is a disagreement between the attorney and client as to the amount due him for professional services, and the attorney retains in good faith what he believes to be justly his due, he would not be liable to the client in this form of action; he would not be guilty of professional misconduct or a violation of professional duty. But the evidence in this case shows that the amount retained was far beyond the amount owing to defendant, and also that the pretext upon which the defendant claimed the right to keep it was unfounded in fact; and the inference to be drawn is that it was not detained by defendant in good faith, or in the honest belief that it was fairly due to him from the plaintiff. The relation of attorney and client is one of confidence

based upon the ability, honesty and integrity of the attorney; and he cannot be justified in retaining in his hands money belonging to the client, for the purpose of forcing the client to settle at unreasonable terms demanded by the attorney, or for the purpose of driving a hard and extortionate bargain with his client. The honor of the profession, as well as the dignity and purity of courts of justice, whose officer the attorney is, require that such practices shall not be sanctioned. The judgment of the circuit court must be

Reversed and a new trial granted.

The other Justices concurred.