REECK· v. POLK.

1. ATTORNEY AND CLIENT—COMPENSATION.

In action by clients against their attorney who was also a real estate broker, record *held*, sufficient to sustain finding of circuit court that agreement for compensation of latter was to be what he could collect on trusteed land contracts in excess of mortgages to plaintiffs on properties he had sold for them.

2. SAME—JUDGMENT IN TORT—COMMINGLED LAY AND PROFESSIONAL SERVICES.

Entry of judgment in tort *held*, warranted in action by clients against attorney who was also a real estate broker, where services were both lay and professional, inextricably commingled, and finding of court that the sums were not withheld in good faith is sustained by the record.

3. SAME—TEMPORARY PERMISSION TO USE COLLECTIONS.

Temporary permission to attorney to use some collections for office expenses would not authorize him to retain other collections not so permitted nor to refuse payment when reasonably demanded.

4. SAME—COMMINGLED LAY AND PROFESSIONAL SERVICES.

Commitment to attorney within common range of professional work is taken in professional capacity and must be accounted for on same basis, there being no rule to separate matters technically into lay and professional services in connection with his duty to account to client for latter's money in attorney's hands.

Appeal from Wayne; Chenot (James E.), J. Sub-
mitted October 2, 1934. (Docket No. 10, Calendar
No. 37,381.) Decided December 10, 1934.

Action by Julius Reeck and Minnie Reeck against
Alexander J. Polk, attorney and real estate broker,
to recover sums allegedly wrongfully retained.
Judgment for plaintiffs. Defendant appeals. Af-
firmed.

*Albert G. Goetz,* for plaintiffs.

*Barbour & Martin,* for defendant.

FEAD, J. Defendant is an attorney-at-law and
also a licensed real estate broker. In 1925, he sold
a 60-acre farm for plaintiffs at $3,200 per acre, 20
per cent. paid in cash and the balance secured by
mortgage. He received $9,540 commission from the
down payment. Afterwards he sold a 100-acre farm
for plaintiffs on like terms, receiving a commission
of $14,837. The purchasers subdivided the prop-
erty and sold over 300 lots on land contract. De-
fendant handled the collections and legal matters
for plaintiffs in connection with the properties until
1930. He also performed other legal and collection
services for them. He made some payments to
them but no settlement was had nor statement of
collections and charges rendered by him to them.
Finally, on demand by plaintiffs for moneys due
them, defendant claimed right to keep all collections
made by him as compensation for his services and
expenses and denied there was a balance owing
plaintiffs. Plaintiffs brought this suit at law, the
declaration containing two counts in trespass on the
case and the common counts in assumpsit. Trial
was had before the court and plaintiffs had judg-
ment of $3,360.18 in trespass on the case.

In reaching the result, the court allowed defendant a set-off in several items for professional services. This review involves his claim of $5,550 for general legal and collection services and $650 for litigation in connection with the mortgages and properties.

It is plaintiffs' claim that when the original sales were made by defendant they agreed that, in consideration of his receiving his whole commission from the down payments, defendant would perform all collection and legal services incident to the mortgages and property without cost to plaintiffs. Defendant denies such agreement. The court held the agreement as claimed by plaintiffs established by the evidence. The subsequent conduct of the parties tends to support the finding.

In February, 1928, the purchasers were in default in their mortgages. Defendant negotiated an agreement with them, executed also by plaintiffs, by which land contracts of about $64,000 were assigned by the mortgagors to defendant as trustee to secure payment of $33,000 of interest due. Defendant began collections on the pledged contracts. On July 6, 1928, however, the mortgagors and defendant executed an agreement by which the mortgagors agreed to quitclaim the properties and assign the outstanding contracts to defendant, the mortgagors to be released from further liability on the mortgages, defendant to furnish release assigned by the plaintiffs and defendant to perform the outstanding land contracts. The agreement provided also that defendant would reconvey to the mortgagors in case of payment of all sums due and defendant's expenses before January 15, 1929. In connection therewith the mortgagors executed to defendant a quitclaim of the premises.

Thereafter, defendant handled the collections on the contracts and remitted to plaintiffs about half

of the sums he collected. Defendant claims that
while the instruments ran to him personally, he took
merely as trustee for plaintiffs and it was agreed
he should handle the properties for them. Plaintiffs
claim defendant said he would take what excess he
could earn from the properties for his compensa-
tion and expenses after the mortgages had been
paid.

The matter of compensation came to their atten-
tion at the time and in connection with the trans-
action. On July 6th defendant prepared, and had
plaintiffs execute, an agreement to pay him $1,000
per month as compensation for making collections
and handling the properties. The agreement is not
in the record but it was referred to in an exhibit
dated the same day, executed by defendant, which
recites its terms and states that the agreement was
signed to show it to the mortgagors, or whoever
might be interested, in court or otherwise, but that
he, defendant, would not attempt to collect the
$1,000 per month from plaintiffs. Probably the
agreement to pay $1,000 per month was executed to
afford defendant a basis for charge against the
mortgagors if they redeemed. But failure of de-
fendant to mention a basis upon which he would
charge plaintiffs, in the agreement not to collect the
$1,000, has some force of indicating that he was not
charging them for the services.

The indication is further strengthened by the fact
that, during the period of nearly six years covering
the relationship between them, defendant never sub-
mitted a statement of the charges he now claims nor
does he produce any books to show that he had made
any such charges.

The item of $650 was for litigation in connection
with the properties. It involved suits by claimants
under the mortgagors to set aside the conveyances

from the mortgagors to defendant and the court granted relief on the ground of defendant's prior knowledge of the rights of claimants and of his fraud.

Upon the record, we cannot say the court erred in finding the agreement for compensation as claimed by plaintiffs and in rejecting the items claimed by defendant.

Defendant contends that entry of judgment in tort was error because the collections involved both lay and professional services and for lay collections trover would lie only in case it was his duty to pay plaintiffs the identical moneys received by him. Plaintiffs expressly allowed him to use some collections for office expenses when the contracts were taken over and defendant argues that the relationship between them was that of debtor and creditor. The temporary permission, of course, would not authorize him to retain other collections not so permitted nor to refuse payment when reasonably demanded. The services to be performed by defendant for plaintiffs were within the common range of professional work, some of them were purely legal and most of them involved legal ability and action. When an attorney receives such a commitment, he takes it in his professional capacity and must account upon the same basis. We know of no rule which permits matters so commingled to be separated technically into lay and professional services in connection with an attorney's duty to account to his client for the latter's money in his hands.

The court held, and the record justifies it, that, in refusing to pay plaintiffs the moneys due them, defendant did not act in good faith, but he knew that compensation due him for his services did not equal plaintiffs' moneys in his possession. His want

of good faith is particularly demonstrated by the fact that, although he knew the agreement to pay him the $1,000 per month was made for a special and obviously improper purpose and he had agreed in writing not to collect it, he included the charge as a set-off in his bill of particulars in this suit.

The following excerpt from *Robinson* v. *Hawes*, 56 Mich. 135, 139, approving judgment in tort under similar circumstances, is illuminative:

''In a case where there is a disagreement between the attorney and client as to the amount due him for professional services, and the attorney retains in good faith what he believes to be justly his due, he would not be liable to the client in this form of action; he would not be guilty of professional misconduct or a violation of professional duty. But the evidence in this case shows that the amount retained was far beyond the amount owing to defendant, and also that the pretext upon which the defendant claimed the right to keep it was unfounded in fact; and the inference to be drawn is that it was not detained by defendant in good faith, or in the honest belief that it was fairly due to him from the plaintiff. The relation of attorney and client is one of confidence based upon the ability, honesty and integrity of the attorney; and he cannot be justified in retaining in his hands money belonging to the client, for the purpose of forcing the client to settle at unreasonable terms demanded by the attorney, or for the purpose of driving a hard and extortionate bargain with his client. The honor of the profession, as well as the dignity and purity of courts of justice, whose officer the attorney is, require that such practices shall not be sanctioned.''

Judgment affirmed, with costs.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.