### In re PENINSULA ROOFING & SHEET METAL, INC., Debtor.

#### Bankruptcy No. HT 79–01871.

United States Bankruptcy Court, W. D. Michigan.

Feb. 23, 1981.

Robert J. Stephan, Elk Rapids, Mich., for Trustee.

Wallace H. Tuttle, Traverse City, Mich., in pro. per.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

The trustee in this estate, Nathan E. Noteware, requests an order requiring Wallace H. Tuttle, Esq., attorney for the debtor, Peninsula Roofing & Sheet Metal, Inc., to turn over $3,250.00.

On October 19, 1976, a "retainer agreement" was entered into between Peninsula and Tuttle under which Tuttle would per-

form legal services from time to time, as requested, at a stipulated hourly rate. Also, under this agreement, a retainer fee of $500.00 was paid and an attorney's lien was imposed "upon assets received or held on behalf of client, in trust or otherwise, to secure payment of fees and costs * *."

In late 1978 and early 1979, Peninsula became delinquent in its payments on attorney's fees. These delinquencies reflected the overall corporate financial problems which resulted in the permanent closing of the business on or about July 25, 1979. President of Peninsula, Joseph P. Jeffs, and Tuttle discussed Peninsula's failure to pay Tuttle's fees and Tuttle's inability to represent Peninsula unless these fees were paid. Jeffs indicated that he had a certain account receivable coming in which would be turned over to Tuttle to apply on past attorneys fees and as a fund for payment for future work to be done. Although Empire State Bank held a security interest in all accounts receivable, Jeffs understood that the bank released the account receivable to Peninsula to allow it to obtain legal services. Peninsula did receive a $3,250.00 check in payment of an account receivable on August 6, 1979. This check was turned over to Tuttle who deposited it in his trust account from which he made disbursements from time to time on Jeffs' authorization. Part of these funds, $1,946.96 was used to pay the past due accounts. The remaining funds of $1,303.04 were debited as follows:

| Date of Debit | Period when services rendered | | Amount |
|---|---|---|---|
| 8/31/79 | August | 1979 | $205.03 |
| 9/30/79 | September | 1979 | 127.40 |
| 12/31/79 | December | 1979 | 424.72 |
| 2/29/80 | February | 1980 | 75.14 |
| 3/31/80 | January thru March 1980 | | 470.75 |

As Peninsula was not operating during this period, the services performed apparently dealt with telephone calls and conferences in regard to pending actions by creditors (especially the Empire State Bank), attending a discovery proceeding, preparation of appearances and answer in this case, and attending the pre-trial conference on the involuntary petition.

On October 18, 1979, an involuntary petition was filed against Peninsula. An answer was prepared and filed on Peninsula's behalf but, on consent of debtor, an order for relief was entered November 26, 1979.

On January 18, 1980, the trustee gave notice that he abandoned "all accounts receivable," but indicated that any interested person could file an objection and a request for hearing. Peninsula did file such an objection but this objection was later withdrawn. No other objection was filed.

It is the claim of the trustee that the payment of the antecedent debt to Tuttle out of his trust fund was a voidable preferential transfer, and asserts that the balance of the trust fund is an asset belonging to this estate.

Tuttle denies that there was any voidable preferential transfer, that the trustee had abandoned any interest in the fund, and that he retained an attorneys lien in said monies.

■ A trustee is not obliged to accept property so encumbered with liens as to be burdensome to the estate. *Meyer v. Fleming,* 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946); *In re Polumbo,* 271 F.Supp. 640 (W.D.Va., 1967). Following abandonment, title revests in the debtor. *Scharmer v. Carrollton Mfg. Co.,* 525 F.2d 95 (6th Cir., 1975); *Schmidt v. Esquire, Inc.,* 210 F.2d 908 (7th Cir., 1954) *cert. den.* 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646; *In re Thomas,* 204 F.2d 788 (7th Cir., 1953); *Tuffy v. Nichols,* 120 F.2d 906 (2d Cir., 1941), *cert. den.* 314 U.S. 660, 62 S.Ct. 113, 86 L.Ed. 528; *In re Roberts,* 460 F.Supp. 88 (N.D.Ga., 1978); *In re Polumbo, Supra; In re Tarpley,* 4 B.R. 145 (Bkrtcy., M.D., Tenn., 1980). Although, under the Bankruptcy Act of 1898, there was some question as to whether approval of the court was necessary to effect an abandonment, and the Court of Appeals for the Sixth Circuit indicated in *Scharmer v. Carrollton Mfg. Co., supra,* that authorization by the bankruptcy court was necessary, 11 U.S.C. Sec. 554(a) provides that:

"After notice and a hearing, the trustee may abandon any property of the estate

that is burdensome to the estate or that is of inconsequential value to the estate." 11 U.S.C. Sec. 102 defines "notice and a hearing":

"(1) 'after notice and a hearing', or a similar phrase—

(A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

(B) authorizes an act without an actual hearing if such notice is given properly and if—

(i) such a hearing is not requested timely by a party in interest; or

(ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act;"

Thus, the trustee did abandon "all accounts receivable" by his notice, with an opportunity to be heard, on January 18, 1980.

■ But, on the date of the abandonment, the $3,250.00 in question had ceased to be an account receivable. 11 U.S.C. Sec. 547(a)(3) states, " 'receivable' means right to payment, whether or not such right has been earned by performance." Abandonment is not to be lightly inferred. *United States v. Ivers*, 512 F.2d 121 (8th Cir., 1975). The burden of showing abandonment rests on the party relying on it. *Stanolind Oil & Gas Co. v. Logan*, 92 F.2d 28 (5th Cir., 1937) *cert. den.* 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592 and 303 U.S. 636, 58 S.Ct. 522, 82 L.Ed. 1097. Therefore, I would find that in abandoning accounts receivable, trustee did not abandon his rights to the $3,250.00 fund. Even if we would find that said fund could be an "account receivable", it was still not abandoned. This account was not listed by the debtor in its schedules as an account receivable and the only reference to the $3,250.00 is as a "payment for services to attorney." While the existence of the fund was disclosed at the meeting of creditors, that meeting did not take place until after the abandonment. An abandonment will not revest title in a debtor as "to unsche-duled assets of which the trustee was ignorant and had an opportunity to make an election." *Scharmer v. Carrollton Mfg., Co., supra.* Therefore, I find that there was never an abandonment of the $3,250.00 fund.

■ The trustee claims that there was a voidable preferential transfer of the said fund. When he received the fund, Tuttle placed it in his trust account for disposal on authorization of the trustee. Thus, the turning over of the $3,250.00 check was not a preference. Tuttle held the funds in trust for the debtor. But, when Tuttle applied the check to the antecedent debt owed to him with the consent of debtor, then there was a transfer. 11 U.S.C. Sec. 547(b) provides:

"Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or"

\* \* \* \* \* \*

"(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

11 U.S.C. Sec. 101(40) states:

" 'transfer' means every mode, direct or indirect, absolutely or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest."

Under this broad definition there can be no doubt that the payment by Tuttle as trustee of the $3,250.00 fund to himself to apply on the debt due him was a transfer under Sec. 547. Certainly, on the date of the transfer, the fund was at least an "equitable interest" of debtor if not a "legal interest." 11 U.S.C. Sec. 541(a). The transfer was also for the benefit of Tuttle, was for an antecedent debt and was made within 90 days before the date of the filing of the petition. 11 U.S.C. Sec. 547(f) provides that for the purpose of the section, "the debtor is presumed to have been insolvent on or during 90 days immediately preceding the date of the filing of the petition." There being no evidence to the contrary, I find that debtor was insolvent at the time of the transfer. Tuttle also received more than he would have received if the transfer had not been made. Therefore, under 11 U.S.C. Sec. 547(b), the transfer of the payment by Tuttle, as trustee, to himself, was a voidable preferential transfer.

But, Tuttle claims the trustee may not avoid this transfer because of the prohibition under 11 U.S.C. Sec. 547(c)(2). This provision states:

"The trustee may not avoid under this section a transfer—

" * * *

"(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;"

I cannot agree that subsection (c)(2) applies in this case. The payment did not incur nor was it made in the ordinary course of business or financial affairs of the debtor. Debtor had closed its business, it was insolvent, and attempting to dissolve; its secured creditor was about to foreclose.

Under these circumstances it cannot be said that the payment was made according to ordinary business terms. The monies were obtained through the consent of the secured party which would otherwise have had a lien on the account receivable. For protection, the funds were held by Tuttle in trust, and the payment was made by Tuttle as such trustee to himself. This was anything but "in the ordinary course of business."

The "ordinary course of business exception" was enacted...

"... to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy .." House Report No. 95–595, 95th Cong., 1st Sess. (1977) 373, U.S.Code Cong. & Admin.News 1978, 5787; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 88 U.S.Code Cong. & Admin.News 1978, 5787. See also 4 Collier on Bankruptcy (15th Ed.) ¶ 547.38, p. 547–113.

*In re Bowen*, 3 B.K. 617, 6 B.C.D. 254 (Bkrpt. Ct. E.D.Tenn.1980) makes reference to Richard B. Levin's article, "An Introduction To The Trustee's Avoiding Powers", 53 Am.Bankr.L.J. 173, 186 (1979), which uses the label, "ordinary trade credit transactions" and gives as an example the sale of goods from a business supplier on account. Another interesting discussion is found in an article by Michael Kaye, "Preferences Under The New Bankruptcy Code", 54 Am. Bankr.L.J. 197, 209–2 (1980):

"... There was no such express exception under the Old Act. However, the courts often allowed regular business expenses paid by the debtor under the rationale that it was in the best interest of the estate to allow the debtor to continue in business. The "current expense" rule, as it was known, also was predicated on the notion that current expenses were not antecedent debt, and therefore payment of them was not preferential. 3 Collier on Bankruptcy ¶ 60.19 (14th Ed. 1975) at 874–853 ...

"Expenses generally allowed included wages and rent, 3 Collier, *supra* at 852–53, and general operational expenses ...

[cites cases covering advertising, warehousing, and general business expenses, and payment of rent/tax arrearages to realize value of leasehold] . . .

". . . Whether in practice Code § 547(c)(2) allows the same expenses as did the 'current expense' rule, remains to be seen. The underlying rationale of the two is the same: no diminution of the estate, payment not for antecedent debt, and allowing the debtor to stay in business. In application, however, there are two main areas in which the Code may bring new results: 1) the emphasis of the Code language on 'ordinary course'; and 2) the rigid 45 day period, computed from the date of incurrence of the debt . . ."

In conclusion, I do not find Sec. 547(c)(2) applicable.

■ Tuttle also contends that the fund in question is subject to an attorney's lien and, therefore, there was no preferential transfer. Attorneys' liens have been recognized by the courts for well over a hundred years. *McPherson v. Cox*, 96 U.S. 404, 24 L.Ed. 746 (1878); *In re Paschal*, 77 U.S. (10 Wall.) 483 (1871), 19 L.Ed. 992; *In re Professional Hockey Antitrust Litigation*, 371 F.Supp. 742 (E.D.Pa., 1974). Here the lien would be a general possessory or retaining lien. *In re Southwest Restaurant Systems, Inc.*, 607 F.2d 1243 (9th Cir., 1979) *Reh. den., Cert. den.* 444 U.S. 1081, 100 S.Ct. 1035, 62 L.Ed.2d 765 (1980); *Adams, George, Lee, Schulte & Ward, P. A. v. Westinghouse Electric Corp.*, 597 F.2d 570 (5th Cir., 1979). Attorneys liens are recognized in Michigan "as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their clients." *Haskins v. Bell*, 373 Mich. 389, 129 N.W.2d 390 (1964); *Reeck v. Polk*, 269 Mich. 252, 257 N.W. 698; *Wipfler v. Warren*, 163 Mich. 189, 128 N.W. 178 (1910); *Pierce v. Underwood*, 103 Mich. 62, 61 N.W. 344 (1894); *Robinson v. Hawes*, 56 Mich. 135, 22 N.W. 222 (1885); *Kysor Industrial Corp. v. D. M. Liquidating Co.*, 11 Mich.App. 438, 161 N.W.2d 452 (1968).

■ This attorneys' lien survives bankruptcy. *Browy v. Brannon*, 527 F.2d 799 (1976); *In re Prudence Co., Inc.*, 96 F.2d 157 (2d Cir., 1938); *In re San Juan Gold, Inc.*, 96 F.2d 60 (2d Cir., 1938).

■ But, the attorneys retaining lien depends upon possession 7 *Am.Jur.2d*, Attorneys at Law Sec. 315. Thus, in our case, the transfer which created the attorney's lien was the transfer of the funds to the attorney to hold in trust for the debtor. Thus, although I would find that Tuttle obtained an attorney's lien at that time to the extent of the antecedent debt, this does not improve his position for the transfer which created that lien was itself a preferential transfer. To hold to the contrary would eliminate any payment on an antecedent debt as a preferential transfer, if it is to an attorney. The debtor could always turn over the required funds to his attorney on the eve of bankruptcy and the attorney would then seize the funds under his attorneys' lien to apply on antecedent debts. As was stated in Senate Report No. 95–989, 95th Cong.2d Sess. (1978) 39, U.S.Code Cong. & Admin.News 1978, 5825:

"Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny." Senate Report No. 95–989, 95th Cong.2d Sess. (1978) 39, U.S.Code Cong. & Admin. News 1978, 5825.

Therefore, I would find that the payment by Tuttle of the sum of $1,946.96 to himself to apply on the antecedent debt was a voidable preferential transfer and must be returned to the trustee.

■ Any payments from the funds after the payment and creation of the trust would not be on an antecedent indebtedness and thus would not be a preferential transfer. Therefore, the payments on August 31, 1979, and September 30, 1979, totalling $332.43 were not preferential.

■ As to the payments from December 31, 1979, and March 31, 1980, we have a different problem. As testified to by Tuttle, he held the funds in trust for his client. On the date of the order for relief, there was on hand in this trust fund $970.61. 11 U.S.C. Sec. 542(a) provides in part:

"Except as provided in section (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease * * shall deliver to the trustee, and account for, such property, or the value of such property * *"

While I do not believe Tuttle was a custodian as he had not been "appointed in a case or proceeding not under this title", 11 U.S.C. Sec. 101(10), it would be immaterial in this case as "a custodian shall deliver to the trustee the property of the debtor transferred to such trustee * * that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case."

Therefore, an order will be entered ordering the defendant to turn over to the trustee the sum of $2,917.57. No costs are allowed to either party. Defendant may file a petition for fees as attorney for the debtor as an administrative expense in accordance with the provisions of Bankruptcy Rule 219.