**Laurence H. KALLEN, as Trustee, Plaintiff-Appellee,**

v.

**Spiros LITAS, Eleftherios Bozionellos, Ash, Anos, Freeman & Logan, and Makis Nirris, Defendants-Appellants.**

**No. 84 C 8942.**

United States District Court,
N.D. Illinois, E.D.

March 14, 1985.

Robert W. Boos, II, Yvor E. Stoakley, Arnstein, Gluck, Lehr, Barron & Milligan, Chicago, Ill., for plaintiff-appellee.

Bruce T. Logan, David L. Tomchin, Ash, Anos, Freedman & Logan, Chicago, Ill., for defendants-appellants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

The appellant, Ash, Anos, Freeman & Logan (hereinafter the "firm") appeals from a decision of Bankruptcy Judge Hertz, granting summary judgment to the bankruptcy trustee on his claim that a transfer of $8,914.84 to the firm by the debtor, Brass Kettle Restaurant, Inc., made pursuant to a contingent fee agreement constituted a preferential transfer. *See* 11 U.S.C. § 547(b) (Supp.V.1981).

Judge Hertz further held that the subject transfer was not excepted by any of the provisions contained in Section 547(c)(1)–(3) (11 U.S.C. § 547(c)(1)–(3)), and so ordered the firm to return $8,914.84 to the trustee for the benefit of the debtor's creditors. For the reasons given below, the judgment of the Bankruptcy Court is affirmed.

### I. FACTS

On May 18, 1981, the debtor's business premises were damaged by fire. Thereafter, on October 11, 1981, the debtor retained the firm to represent it in connection with actions that had arisen from the fire loss. Under the terms of the retainer agreement executed on October 11, 1981 the debtor "... agree[d] to pay the firm ... the sum of ... plus 40% ... of any recovery made on their behalf." (R. 5, Ex. A). The retainer agreement also contained a rebate clause reducing the amount paid to correspond to actual hours spent. The debtor's principals signed the retainer agreement both as corporate officers and as individuals.

On November 11, 1981, the firm negotiated a $40,000 settlement with the owner-lessors of the corporate premises in connection with a forcible detainer action. The firm initially retained $16,000 of the $40,-000 settlement as payment for legal services rendered to the debtor. On December 23, 1981, the Brass Kettle's creditors filed an involuntary bankruptcy petition. After the filing of the petition, the firm returned $7,085.65 to the trustee in accordance with the rebate clause contained in the retainer agreement.

The Bankruptcy Court held that the remaining $8,914.84 held by the firm as payment for prepetition legal services constituted a preferential transfer under Section 547(b) and was not subject to exception under Section 547(c)(1)–(3). On appeal, however, the firm contends that: (1) the payment of attorneys' fees pursuant to a contingent fee agreement did not deplete the debtor's assets and so did not constitute a "transfer of property of the debtor"

under Section 547(b); (2) its fees were not paid for or on account of an antecedent debt; and (3) the settlement fund was subject to a valid Illinois attorneys' lien so that there was no preferential transfer. The firm also contends that its receipt of legal fees falls within various exceptions to the preferential transfer section, including the Section 547(c)(1) substantially contemporaneous exchange for new value exception, the Section 547(c)(2) ordinary course of business exception, and the Section 547(c)(3) perfected purchase money security interest exception.

## II. DISCUSSION

### A. Preferential Transfer—Section 547(b)

■ To avoid a prepetition transfer as preferential, the trustee has the burden of proving all five elements of Section 547(b).[1] The firm does not challenge the Bankruptcy Judge's findings that it received more through the subject transfer than it would have in a Chapter 7 case, that the transfer was made while the debtor was insolvent and that the transfer was made within 90 days of the filing of the involuntary petition. This Court will therefore not reexamine Judge Hertz's findings as to these three elements. The only elements of a preferential transfer that remain in issue are: (1) whether there was a transfer of the property of the debtor; and (2) whether the transfer was made for or on account of an antecedent debt.

1. Section 547 of the Bankruptcy Code states:
(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
(A) on or within 90 days before the date of filing of the petition; or

    *     *     *     *     *     *

(5) that enables such creditor to receive more than such creditor would receive if—

### 1. Transfer of the Property of the Debtor Pursuant to Section 547(b)

Section 101(40) of the Bankruptcy Code defines transfer as follows:

'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property, including retention of title as a security interest.

11 U.S.C. § 101(40) (Supp.V.1981). Under this broad definition the payment of $8,914.84 to the firm on or about November 17, 1981 constituted a "transfer" of the Brass Kettle's property pursuant to Section 547(b). On that date, the debtor had at least an equitable interest in the settlement allegedly reserved for attorneys' fees. *In re Penninsula Roofing & Sheet Metal, Inc.*, 9 B.R. 257, 260–61 (Bankr.W.D.Mich. 1981). *See also* 11 U.S.C. § 541(a) (Supp.V. 1981).

Notwithstanding the Code's broad definition of transfer, the firm erroneously argues that the debtor never had control or entitlement to that portion of the settlement fund allegedly set aside for attorneys' fees. Relying on *Rector v. Huddleston*, 14 B.R. 1008 (Bankr.E.D.Tenn.1981) and *Lewis v. Braun*, 356 Ill. 467, 191 N.E. 56 (1934), the firm contends that the contingent fee arrangement constituted a valid equitable assignment of a portion of the $40,000 settlement fund. As a result, they argue, there was no transfer of the debtor's property or depletion of the debtor's estate, because the portion of the fund allegedly set aside for attorneys' fees never became part of the debtor's estate.[2]

(A) the case were a case under Chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547 (Supp.V.1981).

2. To bolster this assertion, the firm relies on *Rector, supra.* That case involved a fund paid by the ex-husband of the debtor into court for the attorneys' fees of the debtor incurred to obtain a divorce. The court held that, since the debtor never possessed an interest in the funds, there was no depletion of the debtor's estate. The instant case is readily distinguishable.

To argue that the $8,914.84 portion of the settlement fund did not constitute property of the debtor's estate contradicts both the intent of Congress and the realities of the transactions. In the instant case, the debtor had an equitable or legal interest in both the forcible detainer action and any proceeds arising therefrom [3] pursuant to Section 541(a)(1).[4]

▮▮ In any event, under Illinois law the contingent fee agreement did not constitute an equitable assignment to the firm of an interest in the subject matter of the portion of the fund allegedly set aside for attorneys' fees. *Anastos v. O'Brien*, 3 Ill. App.3d 1015, 1020, 279 N.E.2d 759, 763 (1st Dist.1972) (and cases cited therein). An equitable lien does not arise as a matter of law from the performance of legal duties in an attorney-client relationship. Rather, such a lien arises out of an express contract creating an equitable assignment. *Lewis v. Braun, supra.* A contingent fee agreement in which a litigant agrees that as compensation for legal services his attorney is to receive a portion of what is realized from a settlement is not an assignment to the attorney of any interest in the subject matter of the litigation. *Department of Public Works v. Exchange Nat'l Bank*, 93 Ill.App.3d 390, 394, 49 Ill.Dec. 218, 221, 417 N.E.2d 1045, 1048 (2nd Dist. 1981); *Anastos, supra.*

▮▮ In order to constitute an equitable assignment on which to base an equitable

attorneys' lien, there must be an implied appropriation of some portion of the fund. *Lewis v. Braun*, 356 Ill. 467, 191 N.E. at 56 (written contract containing no personal guarantee of the client and imposing the fee *directly* on the *res* implied an equitable lien).

In the instant case, the contingent fee agreement does not meet the requisite elements of a valid equitable attorneys' lien. First, the debtor's officers signed the note personally. More importantly, the retainer agreement did not impose the fee directly on the settlement fund or *res;* but merely set the amount due upon settlement, pro rated on an hourly basis. *Exchange Nat'l Bank, supra.* Thus, the firm could, but need not have been compensated from the actual funds recovered in the course of settlement. *Id.*

*Exchange Nat'l Bank* is directly on point. There the retainer agreement stated: "We hereby agree to pay you … an amount equal to [28% of the recovery over $132,000]." *Id.* According to the Illinois Appellate Court that "… contract constitutes nothing more than a personal promise to pay … an did not purport to assign an equitable interest in the … fund." *Id.* Hence, the firm's retainer agreement did not grant the firm an equitable interest in the fund. *Anastos v. O'Brien*, 3 Ill.App.3d at 1020, 279 N.E.2d at 764. At best, the firm possessed a valid contract claim against the debtor. The firm's argument that there was no depletion of the debtor's

---

Here, the debtor possessed the cause of action and any proceeds generated therefrom. *Lewis v. Braun, supra,* 356 Ill. at 478, 191 N.E. at 62.

**3.** Pursuant to Section 541(a)(1), "… the estate is composed of all legal or equitable interests of the debtor…. The scope of this paragraph is broad. It includes all kinds of property, including … *causes of action* …" (emphasis added). H.Rep. No. 95–595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep. No. 95–989, 95th Cong. 2nd Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, 5787. Moreover, the estate includes proceeds derived from any equitable or legal interest held by the debtor. See 11 U.S.C. § 547(a)(1) (Supp.V.1981).

**4.** Even assuming, *arguendo,* that the firm possessed a valid attorney's lien in November, 1981, and that this lien did constitute an equitable

assignment of a portion of the settlement fund, it cannot be said that the debtor possessed no interest in the sum allegedly assigned. In *Lewis v. Braun, supra,* the Illinois Supreme Court stated that, in the case of an equitable lien the client owned the *res* of the fund and merely obligated itself to convert the fund to proceeds and to divide those proceeds with the attorney. *Lewis v. Braun, supra.* Therefore, the principal case relied upon by the firm does not support its argument that the debtor did have control over the portion of the settlement fund allegedly set aside for attorneys' fees. Rather, *Lewis v. Braun* demonstrates that the fund remained the property of the debtor until the transfer on or about November 17, 1981.

estate due to an alleged equitable assignment of a portion of the settlement fund must therefore be rejected.

## 2. Antecedent Debt Pursuant to Section 547(b)(2)

Next, the firm contends that the trustee has failed to meet the antecedent debt requirement of Section 547(b). In essence, the firm claims that the debt came into existence and was contemporaneously paid on November 17, 1981. Whether the November 17, 1981 transfer was made for or on account of an antecedent debt depends upon when the debtor incurred the underlying debt. *See In re Wathen's Elevator, Inc.,* 37 B.R. 870, 871 (Bankr.W.D.Ky.1984) and cases cited therein. In addressing this issue the bankruptcy judge found that:

> [O]n October 11, 1981, the debtor agreed to compensate the firm for legal services rendered in connection with the fire loss. The retainer agreement between the firm and the debtor appears to be a contingent fee agreement. In reality, however, the firm billed and was compensated on an hourly basis. Regardless of the nature of the retainer agreement, the firm possessed a 'claim' against the debtor as of October 11, 1981.

Memorandum Opinion at 4. This finding, that "the firm billed and was compensated at an hourly rate" is not clearly erroneous. Thus, the transfer of November 17, 1981 was made on account of an antecedent debt. *In re Penninsula Roofing,* 9 B.R. at 261; *In re Territo,* 35 B.R. 343, 346 (Bankr.E.D.N.Y.1983).

Moreover, even if this Court were to hold that a true contingent fee arrangement existed between the debtor and the firm, it would still find that the debt was incurred on October 11, 1981 and that the subsequent transfer of November 17, 1981 was made on account of an antecedent debt. The Bankruptcy Code does not define when a debt is incurred. *In re Iowa Premium Meats, Inc.,* 695 F.2d 1109 (8th Cir.1982). It does define "debt" as liability on a

**5.** The *Hudson* court examined the definition of "debt" under the more narrow Bankruptcy Act of 1898 (as amended). See 11 U.S.C. § 1(14)

"claim." 11 U.S.C. § 101(11) (Supp.V. 1981). The Code defines "claim" as any "... right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, *contingent,* matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured...." 11 U.S.C. § 101(4)(A) (Supp.V.1981).

The legislative history of Section 101(4)(A) indicates that its drafters intended to provide the broadest possible definition of the word claim. *Ohio v. Kovacs,* —— U.S. ——, 105 S.Ct. 705, 709, 83 L.Ed.2d 649 (1985). "The bill contemplates that all legal obligations of the debtor no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." S.Rep. No. 95–989, 95th Cong., 2nd Sess. 22 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 309 (1977); U.S.Code Cong. & Admin.News 1978, 5787, 5808. Both the House and Senate Reports explicitly state that the terms "debt" and "claim" are coextensive: A creditor has a claim against the debtor, the debtor owes a debt to the creditor. S.Rep. No. 95–989, 95th Cong. 2nd Sess. 23 (1978), H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 310 (1977); U.S.Code Cong. & Admin.News 1978, 6267. *See also In re Iowa Premium Meats, supra* at 1111; *In re Fulghum Const. Co., Inc.,* 7 B.R. 629 (Bankr.M.D.Tenn.1980); *In re Hudson Quality Meats, Inc.,* 29 B.R. 67 (Bankr.N.D.N.Y.1982) (noting that the primary criteria for establishing a debt is the existence of a liability which may be fixed or contingent).

■ A debt may depend, as to existence or amount, on either the occurrence or the timing of some future event. *In re UNR Industries, Inc.,* 29 B.R. 741, 745–6 (N.D. Ill.1983). As aptly stated in *In re Hudson,* the firm "... became a creditor ... with a ... claim founded upon a *contingent contractual liability* and was therefore in a position to receive a preferential transfer." 29 B.R. at 72 (emphasis added).[5] *See also In re Territo, supra.*

(Supp.1975). The definition of the term "claim," upon which the definition of the term

■ Although the existence or amount of the instant debt depended on the existence or amount of the settlement of the forcible detainer action, a provable contingent claim came into existence upon the signing of the retainer agreement on October 11, 1981, when the debtor first became legally bound to pay for the firm's legal fees. As a result, this Court affirms the bankruptcy judge's holding that the instant debt was incurred on October 11, 1981. The payment of legal fees on or about November 17, 1981 therefore constituted a transfer on account of an antecedent debt.[6]

### (B) Excepted Transfers Pursuant to Section 547(c)

The firm also contends that it has borne the burden of proving that the subject transfer falls within one or all of the exceptions enumerated in Section 547(c)(1)–(3). In addition, the firm contends, albeit in veiled terms, that it has perfected a valid statutory attorneys' lien which would be excepted under the statutory lien exception contained in Section 547(c)(6).

### 1. Section 547(c)(1)—Contemporaneous Exchanges for New Value

■ Section 547(c)(1) provides that a trustee may not avoid a transfer to the extent that transfer was:

(A) *intended by the debtor and the creditor* to or for whose benefit such transfer was made *to be a contemporaneous exchange for new value given to the debtor,* and

(B) in fact a *substantially contemporaneous exchange.*

(emphasis added). 11 U.S.C. § 547(c)(1) (Supp.V.1981). The firm's reliance upon the exception found in Section 547(c)(1) is misplaced. That subsection was meant to apply to cash or quasi-cash transactions.[7]

■ Section 547(c)(1) provides an express exemption for transfers made to a creditor shortly after the creditor has extended new value to the debtor. *In re Hudson, supra,* 29 B.R. 67. To satisfy the exemption, three elements must be proven. First, the creditor must have extended new value to the debtor, which is defined as "money or money's worth in goods [or] services." 11 U.S.C. § 547(a)(2). The performance of legal services by the firm constitutes such new value. Second, the parties must have intended the new value and reciprocal transfer by the debtor be contemporaneous. *In re Hudson,* 29 B.R. at 77. Lastly, the exchange must in fact have been contemporaneous. As the bankruptcy judge correctly held, the instant transfer was neither intended to be contemporaneous nor was it in fact contemporaneous.

By specifically stating that new value in the form of legal services would be provided prior to the transfer of 40% of any settlement of judgment, the fee arrangement itself indicates that neither the debtor nor the firm intended the provision of legal services and payment thereof be contemporaneous. Nor has the firm established that the transfer was "in fact a substantially contemporaneous exchange," since the firm

---

"debt" is based, had been significantly expanded under the Bankruptcy Code of 1978.

**6.** Even assuming, *arguendo,* that the debt was incurred when the settlement was negotiated, the subsequent transfer constituted a preference. The three billing statements from the firm to the debtor indicate that the "actual" transfer dates occurred on December 3, 1981 and January 4, 1982. Memorandum Opinion at p. 7. These statements also indicate that the firm had billed and been compensated on an hourly basis. Thus, the actual transfer date occurred subsequent to both the date the firm alleges that the debt was incurred and the date the petition was filed. See 11 U.S.C. § 549 (Supp.V.1981). Under any mode of analysis the

instant transfer must be viewed as being made on account of an antecedent debt.

**7.** As noted in the subsection's legislative history:
[That exception] is for a transfer that was intended by all parties to be contemporaneous exchange for new value, and was in fact substantially contemporaneous. Normally, a check is a credit transaction. However, for the purposes of this paragraph a transfer involving a check is considered to be 'intended to be contemporaneous.'
H.Rep.No. 95–595, 95th Cong., 1st Sess. 373–74 (1977); S.Rep.No. 95–989, 95th Cong., 2nd Sess. (1978); U.S.Code Cong. & Admin.News 1978, 5787, 6329.

provided legal services for over one month before receiving the $8,914.84 in issue. Moreover, as noted by the bankruptcy judge, the firm's billing statements demonstrate that it received payment on December 3, 1981 and January 4, 1982 for legal services dating from October 11, 1981. As a result, this Court finds that the instant transfer is not exempt under Section 547(c)(1).

### 2. Section 547(c)(2)—Ordinary Course of Business Exception

The firm next contends that the subject transfer falls within the Section 547(c)(2) ordinary course of business exception.[8] This Court cannot agree. *See In re Penninsula Roofing, supra* at 261. The ordinary course exception contemplates normal credit transactions (*see, e.g., In re Penninsula Roofing, supra*), such as the sale of goods for a business supplier on account.[9] The relationship between the debtor and the firm did not arise in the course of such an ordinary trade credit transaction. Further, the debtor had been forced to close its restaurant business due to the fire loss before the firm was even retained. Given sequence of events, this

Court finds Section 547(c)(2) inapplicable to the instant case.

### 3. Section 547(c)(3)—Perfected Security Interest Exception

Finally, the firm maintains that its receipt of legal fees is excepted pursuant to Section 547(c)(3).[10] Specifically, the firm contends that a statutory attorneys' retaining lien attached to the portion of the settlement fund allegedly set aide for attorneys' fees, that it perfected this lien by possession, and that this alleged retaining lien is excepted pursuant to Section 547(c)(3).

It must first be noted that the firm cannot claim that it obtained a valid *statutory* attorneys' lien on the funds generated by the settlement. The firm's failure to serve the requisite notice[11] to the party against whom the debtor had a cause of action and thereby perfect a valid statutory attorneys' lien, renders its alleged lien ineffective both as to the party against whom the debtor had a cause of action, *Department of Public Works*, 93 Ill.App.3d 390,

---

**8.** Section 547((c)(2) provides that the trustee may not avoid a transfer to the extent that such transfer was:

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and transferee; and

(D) made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (Supp.V.1981).

**9.** The ordinary course of business exception was enacted:

... to leave undisturbed normal financial relations of the debtor, because it does not detract from the general policy of the ... section to discourage usual actions by either the debtor or his creditors during the debtors slide into bankruptcy....

House and Senate Reports, *supra;* U.S.Code Cong. & Admin.News 1978, 5787.

**10.** Section 547(c)(3) states that a trustee may not avoid a transfer:

(3) of a security interest in property acquired by the debtor

(A) to the extent such security interest secured a new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of a secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(B) that is perfected before ten days after such security interest attaches.

11 U.S.C. § 547(c)(3) (Supp.V.1981).

**11.** The Illinois Attorneys' Lien Act states in pertinent part:

(A) Attorneys ... shall have a lien upon all claims, demands, and causes of action ... which may be placed in their hands by clients for suits or collections.... To *enforce such lien,* such attorney *shall serve notice in writing* ... upon the party to whom their client have such suit, claims, or causes of action, claiming such lien and stating therein the interest they have.... *Such liens shall attach to any* ... *money* or *property* which may be *recovered* ... *from and after the time of notice.*

Ill.Rev.Stat. ch. 13, § 14 (1982).

49 Ill.Dec. 218, 417 N.E.2d 1045, and as a statutory lien excepted under Section 547(c)(6).[12] Although the firm's failure to perfect its lien under the Attorneys' Lien Act does not bar the firm from claiming a statutory lien against the debtor, *Fisher v. Slayton & Co., Inc.*, 25 Ill.App.2d 250, 166 N.E.2d 617 (1st Dist.1960), the trustee has greater rights. *See* 11 U.S.C. § 544 (Supp. V.1981).

As a result, the firm is forced to contend that its alleged retaining lien is excepted by Section 547(c)(3). However, Congress intended Section 547(c)(3) to apply to an enabling loan [13] situation or where the parties agree to the substitution of new collateral for collateral already covered by a valid security agreement. *In re Enlow*, 20 B.R. 480 (Bankr.E.D.Wash.1982); *see also* 4 Collier on Bankruptcy, Par. 547.03 (15th ed.). Here, it would be unreasonable to construe Section 547(c)(3) to apply to the payment of attorneys' fees pursuant to a contingent fee agreement, or to conclude that the retainer agreement constituted both a security agreement and a "loan" which enabled the debtor to "purchase" new collateral. The retainer agreement states that the debtor agreed to pay the firm "40% ... of any recovery made on their behalf." This language neither created an equitable assignment of a portion of the fund nor described the fund as collateral. Further, the provision of legal services by the firm cannot be viewed as a "loan" which enabled the debtor to recover a fund by way of settlement. The firm has therefore failed to meet the requirement of Section 547(c)(3)(A)(i)–(iii) because it never gave new value to the debtor *as a secured party* to enable the debtor to purchase new collateral. Moreover, the firm has failed to come forward with any evidence that it has perfected its security interest as required by Section 547(c)(3).[14]

In any event, the transfer to the firm of the settlement fund which was alleged to have created the attorneys' possessory retaining lien was itself a preferential transfer:

> To hold the contrary would eliminate any payment on account of an antecedent debt as a preferential transfer, if it is to an attorney. The debtor would always turn over the required funds ... on the eve of bankruptcy and the attorney could then seize the funds under his attorneys' lien to apply on antecedent debts.

*In re Penninsula Roofing*, 9 B.R. at 262. *See also In re Winters and Co.*, 26 B.R. 720, 728 (Bankr.Fla.1982).

In addition, the legislative history supports this conclusion:

> Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny.

S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978) 39, U.S.Code & Admin.News 1978, 5825.

Section 547(c)(3) does not, therefore, permit an attorney to improve his position at the expense of other unsecured creditors

---

**12.** If the firm had indeed perfected a statutory attorneys' lien under § 14 it could have invoked the statutory lien exception contained in Section 547(c)(6). *See In re Territo, supra,* holding that a trustee may not avoid a statutory attorneys' lien created by a contingent fee agreement if that lien is unavoidable under Section 545 (11 U.S.C. § 545 (Supp.V.1981)).

**13.** Any enabling loan is a loan granted to the debtor to purchase a particular piece of merchandise. As part of the bargain the debtor-borrower grants a security interest in the after-acquired merchandise of the lender. *In re Enlow, supra,* 20 B.R. at 483 n. 1.

**14.** As stated previously, the firm did not perfect its statutory attorneys' lien under the Illinois Attorneys' Lien Act. Ill.Rev.Stat. ch. 13, § 14 (1982). Notwithstanding this fact, the firm claims that it has perfected a retaining lien by possession. *See In re Penninsula Roofing, supra,* 9 B.R. at 262. Even assuming the firm possessed such a lien, that lien lapsed and became inoperative when the firm's charges were liquidated. *Upgrade Corp. v. Michigan Carton Co.,* 87 Ill.App.3d 662, 43 Ill.Dec. 159, 410 N.E.2d 159 (1st Dist.1980). In any event, a possessory attorney's retaining lien does not constitute the purchase money security interest granted in connection with an enabling loan contemplated in Section 547(c)(3).

by claiming a possessory retaining lien on payments received on account of an antecedent debt within 90 days of the filing of a bankruptcy petition. As a result, the payment of legal fees is not excepted pursuant to Section 547(c)(3).

### III. CONCLUSION

This Court affirms the bankruptcy court's finding that the retainer agreement created a claim and corresponding debt owed by the debtor as of October 11, 1981. Payment of this debt on or about November 17, 1981 constituted a transfer of the property of the debtor on account of an antecedent debt. The firm therefore received a preferential transfer upon its claim for legal services rendered. Moreover, the firm did not acquire an equitable lien which would except the transfer from Section 547. In addition, the subject transfer was not excepted, as claimed, under the exceptions contained in Section 547(c)(1)–(3).

IT IS THEREFORE ORDERED that the judgment of the Bankruptcy Court is affirmed.