In re WINTERS & COMPANY, INC., and Winters Government Securities Corporation, Bankrupts.

A. Jay CRISTOL, Trustee in Bankruptcy, Plaintiff,

v.

Gerald BEYER, et al., Defendants.

Bankruptcy Nos. 79–33–BKC–JAG, 78–900–BKC–JAG.

Adv. No. 4.

United States Bankruptcy Court, S.D. Florida.

Sept. 10, 1982.

Lawrence R. Metsch, Miami, Fla., for trustee A.J. Crystal.

Stan L. Riskin, Hollywood, Fla., for defendant Beyer.

## PARTIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOSEPH A. GASSEN, Bankruptcy Judge.

### I. INTRODUCTION.

This Adversary Proceeding came on for trial before the Court, sitting without a jury, at Fort Lauderdale, Florida, on Tuesday, February 16, 1982. The Court has carefully considered the evidence presented at trial as well as the post-trial motions and memoranda of law submitted by counsel for the parties. Although the Court has determined that a further evidentiary hearing will be required in order to dispose of this Adversary Proceeding, the Court believes that it is now appropriate to enter the following partial findings of fact and conclusions of law.

### II. THE PROCEDURAL BACKGROUND.

Plaintiff A. Jay Cristol (Cristol) is the Trustee in Bankruptcy for Winters & Company, Inc., (W & C) and Winters Government Securities Corporation (WGSC), Bankrupts. This Adversary Proceeding was commenced on July 30, 1980, with the filing of a complaint naming as Defendants Ger-

ald Beyer (Beyer), Charles D. Franken (Franken), and Allan M. Lerner (Lerner), individually and as partners of Beyer & Lerner and as members of Beyer & Lerner, P.A. At trial, Cristol moved to dismiss Franken as a Defendant, which motion was granted by means of an order entered on February 17, 1982.

Cristol's original Complaint in this Adversary Proceeding was couched in eight (8) counts. Counts I and II of the Complaint sought to recover from Defendants the value of alleged voidable preferences within the meaning of § 60 of the Bankruptcy Act, 11 U.S.C. § 96.[1] In Counts III, IV and V of his Complaint in this Adversary Proceeding, Cristol sought recovery from Defendants under § 67(d) of the Bankruptcy Act, 11 U.S.C. § 107(d), pertaining to fraudulent transfers. Count VI of Cristol's Complaint sought recovery from Defendants pursuant to §§ 70(c) and 70(e) of the Bankruptcy Act, 11 U.S.C. § 110(c) and 110(e), and § 726.01, Florida Statutes, also dealing with fraudulent conveyances. In Count VII of his Complaint, Cristol sought to recover from Defendants under § 70(d) of the Bankruptcy Act, 11 U.S.C. § 110(d), dealing with post-petition, pre-adjudication transfers by a debtor.[2] Finally, in Count VII of his Complaint, Cristol sought to recover from Defendants under § 60(d) of the Bankruptcy Act, 11 U.S.C. § 96(d), dealing with excessive legal fees and expenses paid by a debtor in contemplation of bankruptcy.[3]

---

1. This Adversary Proceeding is governed by the substantive provisions of the Bankruptcy Act of 1898, as amended, because: (1) an involuntary bankruptcy petition was filed against WGSC on August 15, 1978; and (2) W & C and WGSC were adjudicated bankrupts on January 11, 1979. The relevant provisions of the Bankruptcy Reform Act of 1978, which enacted the Bankruptcy Code, did not take effect until October 1, 1979. *See,* § 402, Public Law 95–598, November 6, 1978, 92 Stat. 2549.

Section 60 of the Bankruptcy Act, 11 U.S.C. § 96, in pertinent part provided:

"(a)(1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."

\* \* \* \* \* \*

"(b) Any such preference may be avoided by the trustee if the creditor receiving it to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: . . ."

2. Section 70(d) of the Bankruptcy Act, 11 U.S.C. § 110(d), in pertinent part provided:

"After bankruptcy and either before adjudication or before a receiver takes possession of the property of the bankrupt, whichever occurs first—

"(1) A transfer of any of the property of the bankrupt, other than real estate, made to a person acting in good faith shall be valid against the trustee if made for a present fair equivalent value or, if not made for a present fair equivalent value, then to the extent of the present consideration actually paid therefore, for which amount the transferee shall have a lien upon the property so transferred;

"(2) A person indebted to the bankrupt or holding property of the bankrupt may, if acting in good faith, pay such indebtedness or deliver such property, or any part thereof, to the bankrupt, or upon his order, with the same effect as if the bankruptcy were not pending;

"(3) A person having actual knowledge of such pending bankruptcy shall be deemed not to act in good faith unless he has reasonable cause to believe that the petition in bankruptcy is not well founded.

\* \* \* \* \* \*

"(5) A person asserting the validity of a transfer under this subdivision shall have the burden of proof. Except as otherwise provided in this subdivision and in subdivision (g) of section 44 of this title, no transfer by or in behalf of the bankrupt after the date of bankruptcy shall be valid against the trustee. . . ."

3. Section 60(d) of the Bankruptcy Act, 11 U.S.C. § 96(d), provided:

"If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property

Defendants answered Cristol's Complaint on August 21, 1980, and this Adversary Proceeding entered the pretrial discovery phase, which phase ended with a pretrial

> to an attorney at law, for services rendered or to be rendered, the transaction may be examined by the court on its own motion or shall be examined by the court on petition of the trustee or any creditor and shall be held valid only to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate."

**4.** The Court's Pretrial Order of January 20, 1982, in this Adversary Proceeding provided: "This Adversary Proceeding came on for Pretrial Conference before the undersigned United States Bankruptcy Judge on Wednesday, January 13, 1982, at the Federal Building, 51 S.W. 1st Avenue, Miami, Florida. Plaintiff A. JAY CRISTOL, Trustee in Bankruptcy, was represented at the Pretrial Conference by Mr. Lawrence R. Metsch and Ms. Naomi Hass-Perlman of the law firm of Paul, Landy, Beiley, Harper & Metsch, P.A., Miami, Florida. Defendants GERALD BEYER, CHARLES D. FRANKEN, and ALAN M. LERNER, were represented at the Pretrial Conference by Mr. Stan L. Riskin of Riskin and Dishowitz, Hollywood, Florida. "1. Counsel for Plaintiff, at the Pretrial Conference, orally moved to dismiss Counts III, IV, V, and VI of the Complaint in this Adversary Proceeding. There was no objection on the parts of Defendants to that motion. Accordingly, the Court being fully advised in the premises, it is hereby ORDERED and ADJUDGED that Plaintiff's motion to dismiss Counts III, IV, V, and VI of the Complaint in this Adversary Proceeding be and the same hereby is GRANTED and that Counts III, IV, V, and VI of the same hereby are DISMISSED, WITH PREJUDICE. "2. It is undisputed that an involuntary bankruptcy petition was filed against the above named Bankrupts on August 15, 1978. Further, it is undisputed that the following payments by the Bankrupts to Defendants are in controversy in this Adversary Proceeding:

| DATE OF CHECK | AMOUNT |
| --- | --- |
| January 31, 1977 | $ 9,621.30 |
| March 18, 1977 | 21,155.00 |
| March 18, 1977 | 17,725.00 |
| April 12, 1977 | 17,211.00 |
| May 10, 1977 | 17,193.00 |
| June 24, 1977 | 17,170.25 |
| July 22, 1977 | 17,329.70 |
| September 3, 1977 | 9,888.50 |
| September 3, 1977 | 13,376.55 |
| December 12, 1977 | 5,000.00 |
| December 28, 1977 | 15,000.00 |
| January 11, 1978 | 50,000.00 |
| April 6, 1978 | 5,290.00 |
| July 14, 1978 | 108,000.00 |

conference on January 13, 1982. An extensive Pretrial Order was entered on January 20, 1982,[4] which, among other things, noted

| DATE OF CHECK | AMOUNT |
| --- | --- |
| July 17, 1978 | 33,078.81 |
| August 7, 1978 | 5,937.00 |
| September , 1978 | 11,609.14 |
| October 3, 1978 | 6,927.31 |
| October 17, 1978 | 13,623.80 |

"3. Plaintiff seeks to recover, under Counts I and II of the Complaint in this Adversary Proceeding, the following payments by the Bankrupts to Defendants as voidable preferences within the meaning of § 60b of the Bankruptcy Act:

| DATE OF CHECK | AMOUNT |
| --- | --- |
| July 14, 1978 | $108,000.00 |
| July 17, 1978 | 33,078.81 |
| August 7, 1978 | 5,937.00 |

"4. Plaintiff seeks to recover, under Count VII of the Complaint in this Adversary Proceeding, the following payments by the Bankrupts to Defendants as post-petition transfers within the meaning of § 70d of the Bankruptcy Act:

| DATE OF CHECK | AMOUNT |
| --- | --- |
| September , 1978 | $11,609.14 |
| September 3, 1978 | 6,927.31 |
| October 17, 1978 | 13,623.80 |

"5. Plaintiff seeks to recover, under Count VII of the Complaint in this Adversary Proceeding, the following payments by the Bankrupts to Defendants as legal fees paid in contemplation of the filing of a bankruptcy petition within the meaning of § 60d of the Bankruptcy Act:

| DATE OF CHECK | AMOUNT |
| --- | --- |
| January 31, 1977 | $ 9,621.30 |
| March 18, 1977 | 21,155.00 |
| March 18, 1977 | 17,725.00 |
| April 12, 1977 | 17,221.00 |
| May 10, 1977 | 17,193.00 |
| June 24, 1977 | 17,170.25 |
| July 22, 1977 | 17,329.70 |
| September 3, 1977 | 9,888.50 |
| September 3, 1977 | 13,376.55 |
| December 12, 1977 | 5,000.00 |
| December 28, 1977 | 15,000.00 |
| January 11, 1978 | 50,000.00 |
| April 6, 1978 | 5,290.00 |
| July 14, 1978 | 108,000.00 |
| July 17, 1978 | 33,078.81 |
| August 7, 1978 | 5,937.00 |

"6. Plaintiff has attacked the payments by the Bankrupts to Defendants of July 14, 1978, July 17, 1978, and August 7, 1978, under both § 60b and § 60d of the Bankruptcy Act. At the trial hereafter scheduled, Plaintiff will be permitted to attack those payments only under § 60b of the Bankruptcy Act. Should Plaintiff's attack

the voluntary dismissal by Cristol of Counts III, IV, V and VI of the Complaint.

Counsel for Cristol and Defendants, on February 11, 1982, entered into a written Stipulation of Fact which was thereafter filed with the Court. That written Stipulation of Fact recited the following:

"Plaintiff A. JAY CRISTOL, Trustee in Bankruptcy, and Defendants GERALD BEYER, CHARLES D. FRANKEN, and ALLAN M. LERNER, individually and as partners of BEYER & LERNER and as members of BEYER & LERNER, P.A., by and through their respective undersigned attorneys, hereby stipulate that the Bankrupts, Winters & Company, Inc., and Winters Government Securities Corporation, were insolvent within the meaning of § 1(19) of the Bankruptcy Act, 11 U.S.C. § 1(19), throughout the four (4) month period prior to August 15, 1978."

Prior to the trial held on February 16, 1982, Defendants Beyer and Lerner asserted a counterclaim and set-off against Cristol for legal services allegedly rendered to the Bankrupts in 1977 and 1978 for which they had not been paid.

At the start of the February 16, 1982, trial in this Adversary Proceeding, counsel for Cristol moved to dismiss the Complaint as to Defendant Charles D. Franken. The Court orally granted that motion and entered a written order to that effect on February 17, 1982.

During the course of the trial held on February 16, 1982, in this Adversary Proceeding, Beyer testified that Beyer & Lerner, P.A., was formed in either August or September, 1978, and that all payments made thereafter by the Bankrupts for legal services rendered were to Beyer & Lerner, P.A. Thereafter, counsel for Cristol orally moved for leave to file and serve an Amended Complaint naming Beyer & Lerner, P.A., as a party Defendant. The Court, on February 17, 1982, entered an order granting that motion.[5] Cristol's Amended Complaint was filed on February 18, 1982.[6]

At the conclusion of the presentation of Cristol's evidence during the trial of February 16, 1982, counsel for Defendants moved for the involuntary dismissal of Cristol's claim under § 60(d) of the Bankruptcy Act, 11 U.S.C. § 96(d). That motion was taken

on those payments under § 60b of the Bankruptcy Act prove unsuccessful, he will be permitted, at a later time, to attack those payments under § 60d of the Bankruptcy Act.

"7. It is ORDERED and ADJUDGED that a trial be held in this Adversary Proceeding before the undersigned United States Bankruptcy Judge at 9:30 A.M., Tuesday, February 16, 1982, in Room 203–C, United States Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida.

"DONE AND ORDERED this 20th day of January, 1982, at Miami, Southern District, Florida.

5. The Court's order of February 17, 1982, in this Adversary Proceeding provided:

"This cause came on to be heard upon the motion of Plaintiff A. JAY CRISTOL, Trustee in Bankruptcy, for leave to file an amended complaint asserting a claim under § 70d of the Bankruptcy Act against Beyer & Lerner, P.A. The Court having considered the arguments of counsel and being fully advised in the premises, it is hereby—

"ORDERED and ADJUDGED that Plaintiff's motion for leave to file an amended complaint asserting a claim under § 70d of the Bankruptcy Act against Beyer & Lerner, P.A., be and the same hereby is GRANTED. It is further ORDERED and ADJUDGED that

Plaintiff shall file and serve his amended complaint within five (5) days of the date of this order. It is further ORDERED and ADJUDGED that Defendant BEYER & LERNER, P.A., shall file and serve its response to the amended complaint within ten (10) days thereafter. Pursuant to the stipulation, in open court, on the part of counsel for Defendants, service of process as to the amended complaint shall be accomplished upon Defendant BEYER & LERNER, P.A., through registered mail service upon Attorney Stan L. Riskin, Box 7328, Hollywood, Florida 33021."

6. Count I of Cristol's Amended Complaint sought to recover the value of alleged voidable preferences within the meaning of § 60(b) of the Bankruptcy Act, 11 U.S.C. § 96(b), from Beyer and Lerner. Count II of Cristol's Amended Complaint sought to recover the value of post-petition payments made by the debtors to Beyer & Lerner, P.A., which claim was asserted pursuant to § 70(d) of the Bankruptcy Act, 11 U.S.C. § 110(d). Finally, Count III of Cristol's Amended Complaint sought to recover allegedly excessive legal fees from Beyer and Lerner pursuant to § 60(d) of the Bankruptcy Act, 11 U.S.C. § 96(d).

under advisement by the Court and no evidence was presented at that trial on the issue of the reasonableness of the legal fees received by Beyer & Lerner prior to August 15, 1978.

Defendant Beyer & Lerner, P.A., on March 30, 1982, moved to dismiss Count II of Cristol's Amended Complaint in this Adversary Proceeding as being barred by the Bankruptcy Act's two (2) year statute of limitations, § 11(e), 11 U.S.C. § 29(e). By separate order dated August 23, 1982, the Court has granted that motion.

Now before the Court for decision are the following questions:

1. Should Cristol be awarded judgment against Beyer and Lerner under Count I of Cristol's Amended Complaint, which asserts a claim under § 60(b) of the Bankruptcy Act, 11 U.S.C. § 96(b)?

2. Should the motion of Beyer and Lerner for the involuntary dismissal of Count III of Cristol's Amended Complaint in this Adversary Proceeding, which asserts a claim under § 60(d) of the Bankruptcy Act, 11 U.S.C. § 96(d), be granted?

## III. CRISTOL'S PREFERENCE CLAIM.

### A. *Findings of Fact.*

The Court, having considered the pleadings, stipulations of the parties, and the evidence admitted at the trial of February 16, 1982, makes the following findings of fact:

1. Cristol is the duly appointed, qualified and acting Trustee in Bankruptcy for WGSC and W & C, both Florida corporations.

2. Beyer is a citizen and resident of Broward County, Southern District, Florida, and a member of The Florida Bar.

3. Lerner is a citizen and resident of Broward County, Southern District, Florida, and a member of The Florida Bar.

4. WGSC was organized in November, 1974, and until on or about March 17, 1977, was engaged in the business of buying and selling United States Government securities.

5. W & C was organized in September, 1974, and until on or about April 15, 1977, was engaged in the business of buying and selling municipal and corporate securities.

6. From its inception, WGSC was a wholly owned subsidiary of W & C. Mr. Kenneth Winters was at all pertinent times the President of both companies. At all pertinent times, WGSC and W & C occupied the same leased premises at One Financial Plaza, Fort Lauderdale, Broward County, Florida. At all pertinent times, the officers and directors of WGSC and W & C were substantially identical.

7. Between January, 1977, and May, 1978, Beyer engaged in the private practice of law in Fort Lauderdale, Florida, under the firm name "Law Offices of Gerald Beyer" and served as General Counsel to WGSC and W & C.

8. Between May, 1978, and August 31, 1978, Beyer and Lerner together engaged in the private practice of law in Fort Lauderdale, Florida, under the firm name of "Beyer & Lerner" and served as General Counsel to WGSC and W & C. During that period, Beyer and Lerner held themselves out to the public as partners in the private practice of law.

9. In January, 1977, the market prices of United States Government securities sold by WGSC fell dramatically. Consequently, many customers of WGSC refused to take delivery and pay for securities which they had previously contracted to purchase from WGSC. Those refusals on the parts of the Bankrupts' customers had severely adverse effects upon the financial conditions of WGSC and W & C. Stated simply, WGSC and W & C found themselves without sufficient cash funds to pay their operating expenses and to pay for the securities which they had contracted to purchase from major brokerage concerns.

10. WGSC referred its customer defaults to Beyer, General Counsel to WGSC and W & C, who began to institute breach of contract lawsuits against the customers. In March, 1977, Lerner was brought into Beyer's law office for the principal purpose

of supervising the default litigation against the customers of WGSC.

11. The weakened financial conditions of WGSC and W & C came to the attention of the Securities and Exchange Commission (SEC), as a consequence of which the SEC instituted a civil proceeding to terminate the sales operations of WGSC and W & C. In addition, the SEC undertook an investigation into the activities of WGSC and W & C. Beyer and Lerner represented WGSC and W & C, as well as Mr. Kenneth Winters, in those SEC matters.

12. Between January, 1977, and July, 1977, Beyer rendered periodic billings to WGSC for legal services rendered and expenses incurred for the "default" litigation and for representation in the SEC matters, which billings were based upon hourly time charges. WGSC, during that period, was able to pay the billings rendered by Beyer.

13. WGSC terminated its sales operations in March, 1977, and W & C terminated its sales operations in April, 1977. With the cessation of their sales operations, WGSC and W & C had a single potential source of income: the "default" lawsuits against former customers. By July, 1977, it became clear that WGSC and W & C would be able to pay Beyer for legal services rendered and expenses incurred only when and if settlements were achieved or judgments obtained in one or more of those actions.

14. Commencing in July, 1977, the following procedure came to be used for the payment of legal fees and expenses to Beyer and later Beyer and Lerner: (a) a settlement would be reached with a former customer, pursuant to which the former customer would agree to make a cash payment to WGSC; (b) the former customer would deliver the settlement check to Beyer or Beyer and Lerner, which check would be made payable either to WGSC or the Defendants' trust account; (c) Beyer and Beyer and Lerner would prepare a statement for legal services rendered and expenses incurred during the preceding several weeks or months; (d) the settlement check and the statement for legal services and expenses would be delivered to WGSC, in return for which W & C would issue and deliver to the Defendants a check in the amount of the billing. At the February 16, 1982, trial, Beyer testified that during the four months prior to August 15, 1978, he knew that his law firm's legal fees and expenses were being paid entirely out of the proceeds of settlements with former customers of WGSC.

15. On August 15, 1978, an involuntary bankruptcy petition was filed against WGSC by three major securities concerns. Beyer & Lerner, P.A., was formed on September 1, 1978, and undertook the representation of WGSC in the ensuing bankruptcy proceeding. A settlement was achieved in the bankruptcy proceeding on January 10, 1979, whereby WGSC was adjudicated a bankrupt and W & C filed a voluntary petition, pursuant to which W & C was also adjudicated a bankrupt.

16. During the four months prior to August 15, 1978, WGSC, either directly or indirectly through W & C, made the following payments to Beyer and Lerner for legal services rendered and expenses incurred prior to the dates of payment:

| DATE OF CHECK | AMOUNT |
| --- | --- |
| July 14, 1978 | $108,000.00 |
| July 17, 1978 | 33,078.81 |
| August 7, 1978 | 5,937.00 |
| TOTAL | $147,015.81 |

17. WGSC and W & C were individually and collectively insolvent during the four months prior to August 15, 1978, the date upon which an involuntary bankruptcy petition was filed against WGSC.

18. At the trial of this case on February 16, 1982, Cristol testified, without contradiction, that the payments received by Beyer and Lerner during the four months prior to August 15, 1978, enabled Beyer and Lerner to obtain a greater percentage of their debt than some other creditor of the same class. Specifically, Cristol testified that the major securities brokerage firms which filed the involuntary bankruptcy petition against WGSC were owed several millions of dollars for securities sold to WGSC, none of which had been paid.

19. During the four months prior to August 15, 1978, Beyer and Lerner had reasonable cause to believe that WGSC was insolvent. Indeed, Beyer testified at the February 16, 1982, trial that during the statutory voidable preference period he knew that WGSC was without sufficient assets to pay its liabilities, a fact dramatically evidenced by the manner in which Beyer and Lerner were paid for legal services rendered and expenses incurred—they were paid solely out of the proceeds of settlements reached with former customers of WGSC in the "default" lawsuits.

20. The payments received by Beyer and Lerner during the four months prior to August 15, 1978, were in satisfaction of antecedent indebtednesses. Beyer's deposition testimony of December 17, 1981, and his trial testimony of February 16, 1982, confirmed that the payments received by Beyer and Lerner during the four months prior to August 15, 1978, were for legal services rendered and expenses incurred prior to the dates of payment.

B. *Conclusions of Law.*

Based upon the foregoing findings of fact and upon the Court's consideration of the applicable legal principles, the Court has arrived at the following conclusions of law:

1. Beyer and Lerner, as lawyers for WGSC during the four months prior to August 15, 1978, enjoy no special immunity from liability to Cristol under § 60(b) of the Bankruptcy Act, 11 U.S.C. § 96(b). *See, Mills v. Cohen,* S.D.N.Y., 1951, 102 F.Supp. 726; *Seligson v. Roth,* 9 Cir., 1968, 402 F.2d 883; *In re Ira Haupt & Co.,* 2 Cir., 1970, 424 F.2d 722; and *In Re Pacific Far East Line, Inc.,* 9 Cir., 1980, 644 F.2d 1290, 1293–1294.

█ 2. Cristol, at the February 16, 1982, trial in this Adversary Proceeding, established by a preponderance of the evidence that Beyer and Lerner, during the four months prior to August 15, 1978, received three payments totalling $147,015.81, either directly or indirectly from WGSC, which payments constituted voidable preferences within the meaning of § 60 of the Bankruptcy Act, 11 U.S.C. § 96. Cristol, as the Trustee in Bankruptcy for WGSC, is entitled to recover those three payments.

3. Beyer and Lerner, at the trial of this Adversary Proceeding, resisted Cristol's claim under § 60(b) of the Bankruptcy Act, 11 U.S.C. § 96(b), on the theory that the three payments received by them during the four months prior to August 15, 1978, constituted the satisfaction of their secured claims and, consequently, could not be considered preferential. Specifically, Beyer and Lerner claimed that they held valid attorneys' charging liens, presumably against the settlement proceeds of the "default" lawsuits, which liens were discharged when the three payments were made by WGSC. The Court disagrees with Beyer and Lerner because: (a) at the February 16, 1982, trial of this Adversary Proceeding, Beyer and Lerner presented no evidence whatever to establish the perfection of their asserted attorneys' charging liens in accordance with the requirements of Florida law; and (b) under § 60(a)(2) of the Bankruptcy Act, 11 U.S.C. § 96(a)(2), such liens are conclusively presumed to be preferential.

4. In *Baucom v. Baucom,* Fla.App. 3, 1981, 397 So.2d 347, the Florida Third District Court of Appeal stated:

"With respect to the wife's former attorneys Stabinski, Funt, Levine & Vega, the order dismissing the instant action with prejudice and denying said attorneys' motion to enforce their charging lien is reversed and the cause is remanded to the trial court with directions to grant said motion upon a holding that said attorneys, in our view properly perfected a charging lien upon the settlement proceeds in this cause through the notice of lien for attorneys' fees and costs and the motion to enforce attorneys' fee and lien filed herein ..." (citation omitted) 397 So.2d at 348.

Beyer and Lerner, at the February 16, 1982, trial of this Adversary Proceeding, presented no evidence whatever to establish that they had filed the requisite notices of attorneys' lien in the "default" lawsuits which they were prosecuting on behalf of WGSC

against WGSC's former customers. Absent such proof, this Court is compelled to conclude that Beyer and Lerner never perfected their claimed attorneys' charging liens against the settlement proceeds.

5. Section 60(a)(2) of the Bankruptcy Act, 11 U.S.C. § 96(a)(2), provided:

"For the purposes of subdivisions a and b of this section, a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee ... *If ... any transfer of other property is not so perfected against such liens by legal or equitable proceedings prior to the filing of a petition initiating a proceeding under this Act, it shall be deemed to have been made immediately before the filing of the petition.*" (emphasis supplied)

As previously noted, a preference is a "transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class." The term "transfer" was defined by § 1(30) of the Bankruptcy Act, 11 U.S.C. § 1(30), as follows:

" 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof *or of fixing a lien upon property or upon an interest therein,* absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, *lien,* encumbrance, gift, security, or otherwise; the retention of a security title to property delivered to a debtor

shall be deemed a transfer suffered by such debtor." (emphasis supplied)

6. Because Beyer and Lerner failed to perfect their claimed attorneys' charging liens against the settlement proceeds, the last sentence of § 60(a)(2) of the Bankruptcy Act, 11 U.S.C. § 96(a)(2), operates to cause constructive perfection immediately prior to the filing of the August 15, 1978, involuntary bankruptcy petition against WGSC, within the statutory preference period. Stated differently, the claimed attorneys' charging liens must be deemed to have been voidably preferential transfers within the meaning of § 60 of the Bankruptcy Act, 11 U.S.C. § 96.

7. The Court adopts the rationale of United States Bankruptcy Judge David E. Nims, Jr., in the case of *In Re Peninsula Roofing & Sheet Metal, Inc.,* Bkrtcy.W.D. Mich., 1981, 9 B.R. 257, where on or about August 6, 1979, the debtor turned over a check in the amount of $3,250.00, received from a customer, to the debtor's attorney, Mr. Wallace H. Tuttle, which check was deposited into Mr. Tuttle's trust account. From that trust account, Mr. Tuttle withdrew amounts for legal services rendered and expenses incurred by him in the representation of the debtor. On October 18, 1979, an involuntary bankruptcy petition was filed against the debtor, which resulted in an order for relief on November 26, 1979. The Trustee in Bankruptcy attacked several disbursements from the trust account as voidably preferential within the meaning of § 547 of the Bankruptcy Code, the successor to § 60 of the Bankruptcy Act, 11 U.S.C. § 96. Rejecting Mr. Tuttle's argument that his Michigan-based lien for attorneys' fees rendered the challenged disbursements not voidably preferential, Judge Nimms stated:

"But, the attorneys retaining lien depends upon possession ... Thus, in our case, the transfer which created the attorney's lien was the transfer of the funds to the attorney to hold in trust for the debtor. Thus, although I would find that Tuttle obtained an attorney's lien at

that time to the extent of the antecedent debt, this does not improve his position for the transfer which created that lien was itself a preferential transfer. To hold to the contrary would eliminate any payment on an antecedent debt as a preferential transfer, if it is to an attorney. The debtor could always turn over the required funds to his attorney on the eve of bankruptcy and the attorney would then seize the funds under his attorneys' lien to apply on antecedent debts. As was stated in Senate Report No. 95–989 . . . :

> 'Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny'.

"Therefore, I would find that the payment by Tuttle of the sum of $1,946.96 to himself to apply on the antecedent debt was a voidable preferential transfer and must be returned to the trustee." (citations omitted) 9 B.R. at 262.

8. The three payments which were made by WGSC, either directly or indirectly through W & C, to Beyer and Lerner during the four months prior to August 15, 1978, were voidably preferential within the meaning of § 60(b) of the Bankruptcy Act, 11 U.S.C. § 96(b). *See, also, Matter of KMM Corp.,* Bkrtcy., S.D.Fla., 1981, 14 B.R. 348 (voidability of landlord's lien for rent under Chapter 83, Florida Statutes); *In re Hall,* Bkrtcy., S.D.Fla., 1981, 14 B.R. 186 (voidability of bank's security interest under Chapter 679, Florida Statutes); *In re Belize Airways Limited,* Bkrtcy., S.D.Fla., 1982, 18 B.R. 485 (voidability of lien obtained through execution of writ of attachment).

■ 9. During the four months prior to August 15, 1978, Beyer and Lerner held themselves out to the general public as partners in the private practice of law. Consequently, they are now estopped to deny that such a partnership existed during the statutory preference period and each will be held liable to Cristol for the total amount of the voidably preferential transfers received during the period. *See, Matter of Ward,* Bkrtcy., M.D.Fla., 1980, 6 B.R. 93, 95.

10. Judgment will be entered in favor of Cristol and against Beyer and Lerner, jointly and severally, under Count I of Cristol's Amended Complaint in this Adversary Proceeding, in the principle amount of $147,015.81, plus interest at the Florida statutory rate from August 15, 1978, and Cristol's costs of this action.[7]

## IV. CRISTOL'S CLAIM UNDER § 60d.

At the February 16, 1982, trial of this Adversary Proceeding, Cristol established that WGSC settled many of its "default" lawsuits against former customers for between ten and fifteen cents on the dollar. From this fact, Cristol argues that the bankrupt, WGSC, contemplated the filing of a bankruptcy petition either by or against it within the meaning of § 60(d) of the Bankruptcy Act, 11 U.S.C. § 96(d). Beyer and Lerner, on the other hand, have moved for the involuntary dismissal of Count III of Cristol's Amended Complaint in this Adversary Proceeding on the basis

---

**7.** Section 57(g) of the Bankruptcy Act, 11 U.S.C. § 93(g), provided:

> "The claims of creditors who have received or acquired preferences, liens, conveyances, transfers, assignments or encumbrances, void or voidable under this title, shall not be allowed unless such creditors shall surrender such preferences, liens, conveyances, transfers, assignments, or encumbrances."

The Court has determined that Beyer and Lerner received voidable preferences from WGSC during the four months prior to August 15, 1978, the date upon which an involuntary

bankruptcy petition was filed against WGSC. Beyer and Lerner have counter-claimed against Cristol in this Adversary Proceeding for legal services rendered to the Bankrupts prior to and after the filing of the August 15, 1978, involuntary bankruptcy petition against WGSC. The Court views the counterclaim in this Adversary Proceeding as a claim within the meaning of § 57(g) of the Bankruptcy Act, 11 U.S.C. § 93(g), and will defer ruling thereon until Beyer and Lerner surrender their voidable preferences to Cristol.

that Cristol, at the trial of February 16, 1982, failed to make a prima facie case on the critical question of the debtor's intent. *See, Conrad, Rubin & Lesser v. Pender,* 1933, 289 U.S. 472, 474–475, 53 S.Ct. 703, 704, 77 L.Ed. 1327.

The Court is not prepared, at this time, to rule upon Defendants' motion to involuntarily dismiss Count III of Cristol's Amended Complaint in this Adversary Proceeding. Before ruling on that motion, the Court will consider the oral arguments of counsel for the parties at a hearing to be held on Tuesday, October 26, 1982, at 2:30 P.M., in Room 1410, Federal Building, 51 Southwest First Avenue, Miami, Florida.

Counsel for the parties to this Adversary Proceeding should be prepared, at the hearing scheduled for October 26, 1982, to present evidence bearing upon the reasonableness of the attorneys' fees received by Defendants within the period specified by Count III of Cristol's Amended Complaint.