Edwin L. Bennett, Appellee, v. Chicago and Eastern
Illinois Railroad Company, Appellant.

Gen. No. 43,329.

Heard in the second division of this court for the first district at the February term, 1945. Opinion filed November 6, 1945. Released for publication November 20, 1945.

RAWLINS & WRIGHT, of Chicago, for appellant; LEE W. CARRIER, of Chicago, of counsel.

WYCKOFF & TARPEY, of Chicago, for appellee.

Mr. Presiding Justice Friend delivered the opinion of the court.

,On May 9, 1943 John Henry Deck and Fee Deck, his wife, both of whom resided in Hoopeston, Vermilion county, Illinois, came to their deaths at or near Hoopeston as a result of a crossing accident in which their automobile and a Chicago & Eastern Illinois Railroad Company train were involved. Thereafter, on May 26, 1943, petitions for letters of administration were filed in each estate in the probate court of Vermilion county, and on June 18 Ernest Deck, the brother of John Henry Deck, was appointed administrator of the estates of both decedents. On June 28, 1943 the administrator filed petitions and was appointed administrator of both estates in the probate court of Cook county. On the same day he entered into a written agreement, as administrator, with the plaintiff, Edwin L. Bennett, a Chicago attorney, retaining him "to prosecute and/or settle all suits and claims for damages against C. & E. I. Railroad on account of personal injuries and property damages arising out of an accident" which resulted in the death of the two decedents, and wherein he agreed to pay Bennett as compensation for his services a sum equal to one-third of any amount realized from said claims, either by settlement or judgment. All the children of the decedents were minors and also resided in Hoopeston, Vermilion county.

On August 5, 1943 Robert Rodman filed a request in the probate court of Vermilion county to be relieved as bondsman for Ernest Deck as administrator, and 11 days later, the court ordered Rodman released and appointed Leo W. Burk guardian *ad litem* and special attorney for one of the heirs in the military service. September 7, 1943, by order of the probate court of Vermilion county, the appointment of Ernest Deck as administrator was revoked and canceled, and on the same day, Laura Deck, mother of John Henry Deck, deceased, filed a petition in the probate court of Ver-

milion county for the appointment of Harry Hamilton as administrator to succeed Ernest Deck. At the same time Belle McBride, mother of Fee Deck, deceased, likewise petitioned the court to appoint Harry Hamilton as the administrator of her daughter's estate, and the court on that day entered an order appointing Hamilton as administrator of both estates, and he forthwith took his oath and filed his bond, which was duly approved.

Thereafter, on September 11, 1943, Hamilton as administrator filed a petition in the probate court of Vermilion county for leave to settle the claim against the Chicago & Eastern Illinois Railroad Company in the estate of Fee Deck for $1,750, and Burk as guardian *ad litem* recommended that the settlement be approved. On the same day Belle McBride, mother of Fee Deck, filed her petition asserting that such a settlement would be to the best interest of the estate and should be approved. Also on September 11 Hamilton as administrator petitioned the probate court to settle the claim in the estate of John Henry Deck for the like sum of $1,750, and such settlement was recommended by Burk as guardian *ad litem*. October 9, 1943 the probate court of Vermilion county entered an order authorizing settlement with the Chicago & Eastern Illinois Railroad Company in the estate of both decedents for the sum of $1,750 each, to which Laura Deck and Burk as guardian both consented. After the settlements were approved October 9, 1943, the railroad company gave Hamilton, the administrator, two drafts for $1,750 each and obtained releases from him. However, no release of lien was taken from plaintiff, Edwin L. Bennett, who was unaware of the settlements until after they had been fully consummated. It is conceded that after plaintiff was retained on June 28, 1943 by the first administrator to prosecute or settle the claims of both estates against the Chicago & Eastern Illinois Railroad Company, he

served notice on July 7, 1943 in writing, in compliance with the Attorney's Lien Act, (ch. 13, par. 14, sec. 1, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 9.13]) stating his interest in the matter and claiming a lien on both claims. Subsequently, on January 7, 1944, after he had been apprised of the settlements made and approved by the probate court of Vermilion county, plaintiff filed his petition in the superior court of Cook county setting forth the essential facts hereinbefore related, alleging that in pursuance of his contract he caused a complete investigation to be made of the accident and entered into negotiations with the railroad company with respect to the settlement of said claims, that he acted with due and reasonable diligence in the prosecution and handling of the matters entrusted to him, and performed all the acts required of him, but that the railroad company has refused to honor or recognize his attorney's lien, and that consequently he claims to be entitled to the contingent fee provided for in his contract with the first administrator. After the railroad company had filed its answer, the matter proceeded to a hearing upon the pleadings and oral testimony adduced by both parties touching principally upon the negotiations for settlement carried on between plaintiff and agents of the railroad company, prior to the time that the successor administrator had been appointed. The court found the issues for the plaintiff and awarded him judgment in the sum of $1,166.66, being one-third of the aggregate settlements of both claims, from which the railroad company has taken an appeal.

There is substantially no dispute as to the salient facts as hereinbefore set forth, and as already stated, the railroad company concedes that a written contract was entered into between Bennett and the first administrator and that due notice of lien was served by Bennett upon the railroad company. As the principal ground for reversal it is urged that "The peti-

tioner did not have a valid or enforcible lien, as the Attorney's Lien Act of Illinois does not give an administrator authority to make a contract on a contingent basis so as to charge the amount recovered on account of an alleged wrongful death with an attorney's lien," and in support of that contention defendant cites and relies upon four Illinois decisions: *Schottler v. McArdle*, 174 Ill. App. 125, *Mercer v. Chicago City R. Co.*, 174 Ill. App. 234, *Ryan v. Chicago M., St. P. & P. R. Co.*, 259 Ill. App. 472, and *Coyle v. Velie Motors Corp.*, 305 Ill. App. 135. In the *Mercer* case suit was brought for attorney's fees against an administrator, and the court held that the Attorney's Lien Act of 1909 does not give an attorney a lien on funds held by an administrator, since the administrator has no authority to charge such funds with payment of attorney's fees, and as a basis for its decision the court said: "we think it is clear . . . that no such lien attaches to a fund recovered by an administrator for the benefit of the heirs of a deceased person. *That the defendant from whom the fund is recovered may be required to account to the attorney if his rights are ignored after notice thereof* was held in *Standidge v. Chicago Railways Co.*, 254 Ill. 524. . . . The lien here sought is against the plaintiff, who sued [out a writ of error] as administrator." (Italics ours.) That case not only does not sustain defendant's position, but holds directly to the contrary. *Schottler v. McArdle* evidently did not involve an attorney's lien because the court points out that the attorney's lien statute became effective July 1, 1909, which was three years after the rights of the parties to the suit were fixed. In the *Coyle* case an attempt was made to assert a lien against the estate, whereas in these proceedings the petition does not seek to charge the funds of the estate but was brought against the railroad defendant under a statute designed to protect attorneys against settlements in

contravention of their rights. With respect to the *Ryan* decision, defendant's counsel say that it is "the only Illinois case . . . which can be said to make any departure from this doctrine." In that case the court held the contract for fees "binding and valid," presumably because the administratrix, Mrs. Dow, was also the sole surviving beneficiary of the deceased. None of these cases go any further than to hold that the Act of 1909 does not give an attorney a lien on funds held by the administrator because the latter has no authority to charge such funds with payment of attorney's fees. None of the decisions holds that a contract between the administrator and an attorney is an invalid undertaking. It frequently happens, as in this proceeding, that the sole asset in the estate consists of a chose in action for wrongful death, and it therefore becomes the duty of the administrator to investigate the circumstances of the accident, determine the question of liability and either institute suit or settle the claim, and for the accomplishment of either of these purposes it is incumbent upon him to engage the services of an attorney. It follows that in doing so it is proper for him to enter into a contract with his attorney with respect to compensation, and since the question of liability may in some instances be doubtful, it is the common practice to engage counsel on a contingent basis. Counsel cite no cases and we know of none that holds that such an agreement is invalid, and as a matter of fact it has been common practice for administrators to enter into them. Nor do we think it was incumbent upon the administrator to file a petition or motion in the probate court of Vermilion county to secure the approval of the contract for legal services. Moreover, in this proceeding the first administrator was specifically authorized to prosecute the claim, as appears from the following language contained in the letters of administration: "Know all men by these presents that Ernest Deck has been ap-

pointed Administrator of the estate of John H. Deck, deceased, who died on the 9th day of May, 1943, and is authorized to sue for and collect the personal estate of and debts due the decedent, and is authorized to perform all duties imposed on him so far as there is property and the law charges him; and to do all other acts now or hereafter required of him by law.'' The above also applies to the estate of Fee Deck, deceased. Assuming that the first administrator had succeeded in settling the case with the railroad company, the approved practice would have required him to petition the probate court for approval of the settlement and to pass upon the contract with his attorney and determine the amount of fees to be allowed, and if the court had approved the settlement and allowed attorney's fees for services rendered in bringing it about, we know of no authority that would have precluded the court from authorizing the administrator to charge the funds of the estate with payment of fees; and of course the railroad company, which would be required to pay the amount agreed upon and approved by the court, into the hands of the administrator, could not raise the question of the validity of such a contract if the court approved it and made the orders necessary to carry it into effect.

█ In view of our conclusion that plaintiff's contract with the first administrator was a valid undertaking, and that the railroad company had knowledge thereof and notice that he claimed a lien by reason thereof, it would logically follow that when the railroad company settled the claim with the second administrator without notifying plaintiff, it did so at its peril and should therefore be subjected to the liability contemplated by the statute, because under ch. 3, par. 441, of Administration of Estates (Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 110.538]) ''When the letters of an executor, administrator . . . are revoked, all

acts done by him according to law prior to the revocation of his letters are valid.''

Several other questions are raised and argued by the railroad company, but its counsel was frank enough to say on oral argument that the determination of the foregoing proposition would be conclusive, and therefore it is unnecessary to discuss the other points.

For the reasons indicated we are of opinion that the trial court was correct in its rulings, and that the judgment should therefore be affirmed. It is so ordered.

*Judgment affirmed.*

SCANLAN and SULLIVAN, JJ., concur.