THEMIS N. ANASTOS *et al.,* Plaintiffs-Appellants, *v.* WILLIAM J. O'BRIEN, JR., Defendant-Appellee.

(No. 55096;

First District—January 25, 1972.

*Rehearing denied March 14, 1972.*

Hugh M. Matchett, of Chicago, for appellants.

Isham, Lincoln & Beale, of Chicago, (Michael I. Miller and Paul T. Ruxin, of counsel,) for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

In this case, two lawyers filed a complaint against a fellow-lawyer and two former clients to recover fees which they say would have been collected but for the negligence of the fellow-lawyer. A motion was made to dismiss the complaint, one ground being that it did not state a cause of action. Before there was a ruling, the two lawyers sought to take discovery depositions. They say in their brief, "[i]t might have been possible by taking depositions for discovery * * * that cross-examination of [the fellow-lawyer] might have established a cause of action * * *." The trial judge stayed the taking of depositions. Then, after receiving memoranda of law and hearing arguments, he dismissed the complaint: as to the former clients, leave was granted plaintiffs to amend; as to the fellow-lawyer, the dismissal was with prejudice and a finding that there was no reason to delay an appeal. Later, in two subsequent orders, the trial judge denied motions to add three paragraphs to the complaint.

The two lawyers appealed directly to the Supreme Court, claiming the case involved a substantial constitutional question. After reviewing

the jurisdictional statement, the Supreme Court transferred the appeal to us. In this court the two lawyers contend that dismissal of their complaint was error and that denial to them of the opportunity to take discovery depositions deprived them of rights secured by article II, sections 2 and 19 of the Illinois Constitution and by the fourteenth amendment to the Constitution of the United States. We conclude that in every respect the trial judge's rulings were correct and that no state or federal constitutional right of the two lawyers was infringed. We extend this opinion to give the reasons for our decision.

## I

Omitting its repetitions, legal conclusions and argumentative assertions an referring only to its well-pleaded facts, the complaint discloses the background of the controversy between the parties. Themis N. Anastos and Hugh M. Matchett are members of the bar authorized to practice law in this state and in federal courts of this jurisdiction. On or about June 30, 1959, M.J.D.M. Truck Rental, Inc., a Pennsylvania corporation and William V. Demaio (M.J.D.M.'s president) retained Anastos to sue for or collect on a claim or cause of action for breach of contract which M.J.D.M. had against Hamilton Steel Products, Inc., an Illinois corporation. For his legal services, Anastos was to receive a fee of $2500 plus one-third of the amount recovered by suit or settlement. Anastos, with his clients' consent, retained Matchett as co-counsel. Matchett agreed to work for one-third of Anastos' contingent fee.

July 8, 1960, Anastos and Matchett, on behalf of M.J.D.M., filed a federal-court suit in Chicago against Hamilton Steel Products for $2,372,557. Then, on June 23, 1961 at "[M]atchett's suggestion, [another lawyer, Tom L. Yates] was retained as co-counsel to try the case, * * * [H]e was to be paid one-third of Anastos' contingent fee." Yates filed his appearance, took charge of the litigation and proceeded to prepare the case for trial, with the assistance of Anastos and Matchett. September 15, 1962, Anastos, in compliance with Ill. Rev. Stat. 1961, ch. 13, par. 14, served notice of attorney's lien on Hamilton Steel Products. Then, on October 29, 1963, Demaio and M.J.D.M., with Yates' content but without Anastos' or Matchett's, employed a fourth lawyer, William J. O'Brien, Jr., to try the suit against Hamilton Steel Products. O'Brien took charge of the litigation; and with Yates assisting him, proceeded to prepare the case for trial, "[m]aking no use of [Anastos' or Matchett's] tendered assistance." At the request of Yates who vouched for O'Brien's ability as a trial lawyer, Anastos and Matchett did not object to O'Brien's appearance in the case, "[i]t being without prejudice to their own employment, appearance, compensation, and lien for attorneys' fees."

However, a short time later in a letter signed by Demaio, M.J.D.M.

advised Anastos and Matchett that their employment in the Hamilton Steel Products litigation was terminated. They were told that the corporation was going to seek a court order removing them as attorneys of record for M.J.D.M. and setting the fees payable to them for their legal services. The letter gve no reason for their discharge. Late in March 1964, Yates called Matchett and told him that before going to trial, O'Brien wanted to settle all questions concerning fees due the two lawyers. Yates asked Matchett if he and Anastos would willingly withdraw their appearances in the case. They refused. On April 6, 1964, Yates and O'Brien moved to strike the appearances of Anastos and Matchett as attorneys of record for M.J.D.M. On May 4, 1964, after the motion had been continued, the court ruled that a client can discharge his attorney at any time, with or without cause. The appearances of Anastos and Matchett were stricken, the court retaining jurisdiction to adjudicate the merits and extent of their attorney's lien. Two days later, Yates withdrew his appearance as O'Brien's co-counsel. Thereafter, the cause went to trial and on June 3, 1964, O'Brien obtained a verdict for $107,587 in favor of M.J.D.M., judgment being entered immediately. Post-trial motions were made and on January 22, 1965, the trial court denied the motion for new trial on the filing of a remittitur reducing the judgment to $60,261. Although there was an opportunity to do so, it was not until March 12, 1965, that the federal court judgment was recorded in the office of the recorder of deeds of Cook County. In the meantime, on December 4, 1964, Hamilton filed a Chapter XI petition under the federal Bankruptcy Act. This petition was later withdrawn and Hamilton was adjudged a bankrupt. As a consequence of its late recording, M.J.D.M.'s judgment was not a secured claim against Hamilton Steel Products. A trustee in bankruptcy was appointed and on March 16, 1965, all of Hamilton's real estate was sold free of encumbrances, including M.J.D.M.'s judgment.

It is alleged that had the judgment been recorded promptly, it would have been, as against the rights of the bankruptcy trustee in those proceedings, a secured claim against Hamilton. As a secured claim, plaintiffs alleged that the judgment had a face value of $60,261.77. Out of this amount, Anastos was entitled to $20,087.22, his share under the contingent fee agreement. Anastos was still owed $765.55 on the $2500 fee Demaio and M.J.D.M. agreed to pay him. From the fee due Anastos, Matchett was to be paid a total of $6,695.74. As an unsecured claim, M.J.D.M.'s judgment was worthless. Because of O'Brien's failure to record the judgment, Anastos and Matchett were damaged: Anastos in the sum of $14,148.03, Matchett in the sum of $6,695.74. During the period when the judgment could have been recorded, neither Demaio,

M.J.D.M. nor O'Brien advised Anastos or Matchett of the proceedings that followed the judgment against Hamilton Steel Products. Neither Anastos nor Matchett was told that the judgment had not been recorded. Sometime between June 3, 1964, and December 8, 1964, Hamilton offered to settle the judgment for $30,000. This offer was refused. Neither Anastos nor Matchett was told of this fact nor was their professional advise sought by either Demaio, M.J.D.M. or O'Brien. Had O'Brien kept Anastos and Matchett informed of developments that followed the M.J.D.M. judgment, and had their professional advice been sought, they would have urged recordation of the judgment or steps which, in the bankruptcy proceedings, would have made it a secured claim against Hamilton Steel Products.

It is claimed that at all times mentioned in the complaint, Anastos and Matchett, because of the contingent fee agreement and the attorney's lien, had an interest in the M.J.D.M. judgment. It was the duty of Demaio, M.J.D.M. and O'Brien to protect that interest. After October 9, 1963, when O'Brien came into the litigation, and after May 4, 1964, when the trial court struck the appearances of Anastos and Matchett and deprived them of exercise of any control over the case, it was the duty of O'Brien to bring into the conduct of the case diligence and ordinary legal knowledge, skill and prudence as well as reasonable care of a competent trial lawyer in federal practice. This O'Brien did not do. As a result, the M.J.D.M. judgment was not recorded, he failed to advise and inform Anastos and Matchett of the post-trial proceedings and of the $30,000 offer to settle the judgment. O'Brien failed to seek the advise and professional guidance of Anastos and Matchett which should have been done under the circumstances. During all of the times mentioned in the complaint, Demaio, M.J.D.M. and O'Brien intentionally, willfully, wantonly or negligently failed to protect the interests of Anastos and Matchett in the M.J.D.M. judgment. As a direct and proximate result of this failure, Anastos and Matchett sustained, jointly, damages in the total sum of $20,843.61. Therefore, they pray for judgment jointly and severally, against Demaio, M.J.D.M. and O'Brien in the sum of $20,843.61, plus one-third of the costs, plus interest at the rate of 5% per annum since June 3, 1964.

## II.

The complaint shows that Anastos and Matchett base their claim against O'Brien on the theory that their contingent fee agreement and attorney's lien gave them an interest in the M.J.D.M. judgment. In pressing their appeal, they contend that they were third-party beneficiaries of the retainer contract under which O'Brien was employed; that assumption by O'Brien of his duties to M.J.D.M. was for their

benefit because they would have been paid their fee had the judgment been collected; and because O'Brien knew that Demaio and M.J.D.M. were insolvent, his negligence in failing to record the judgment and enforcing it made him liable to the two lawyers for loss of fees to which they were entitled under their contingent fee agreement. Anastos and Matchett support these contentions with a broad argument that O'Brien, though a lawyer with duties to his clients, also had the duty to protect what they claim was their interest in the judgment.

In meeting these contentions and their supporting arguments, O'Brien denies he owed any duty to Anastos and Matchett. He insists that his duty was only to his clients; but more importantly, that despite their contingent fee agreement and attorney's lien, the two lawyers had no interest in the M.J.D.M. judgment. O'Brien argues that neither a contingent fee agreement nor an attorney's lien gives a lawyer any interest in the subject matter of his client's litigation. Since it was an interest in the judgment that formed the basis of Anastos' and Matchett's complaint against him, O'Brien argues that such an interest did not exist, and its nonexistence establishes the correctness of the trial court's dismissal of the complaint against him with prejudice. These contentions require us to determine whether Anastos and Matchett had an interest in the subject matter of the M.J.D.M. litigation in general, and in the judgment O'Brien obtained against Hamilton Steel Products.

■■ A contingent fee agreement by which a litigant agrees that, as compensation for legal services, his lawyer is to receive a portion of what is realized from a suit or its settlement, is not an assignment to the lawyer of any interest in the subject matter of the litigation. (*Cameron v. Boeger*, 200 Ill. 84, 91-92, 65 N.E. 690.) Despite language in some of the cases which suggests otherwise, the Attorney's Lien Act, Ill. Rev. Stat. 1957, ch. 13, par. 14, adopted after *Cameron* was decided, did not change this important fact in the attorney-client relation. The statute only created a new means of enforcing the right of a lawyer to his fee. (See *Brazil v. City of Chicago*, 315 Ill.App. 436, 43 N.E.2d 212.) That means is a lien in favor of the lawyer on the proceeds of the litigation or its settlement. (*Baker v. Baker*, 258 Ill. 418, 421, 101 N.E. 587.) Notwithstanding an attorney's lien, a litigant can settle the case, satisfy and release the judgment without the knowledge or consent of his lawyer. The lienee, however, must stand ready to pay the lawyer that portion of the proceeds which his client agrees he is to have for his legal services. (*Case v. Emerson-Brantingham Co.*, 269 Ill. 94, 109 N.E. 671.) Thus, demonstrating that neither a contingent fee agreement nor the attorney's lien it produces gives a lawyer any interest in a litigation other than the proceeds, we have held that a litigant, despite a contingent fee contract

and service of an attorney's lien on the defendant, can dismiss his lawsuit and the attorney has no cause of action against the defendant absent proof of settlement with the client. (*Clarke v. Ireland*, 347 Ill.App. 354, 106 N.E.2d 818.) Further, even though he has an attorney's lien, a lawyer cannot compel continuation of a litigation so that his lien rights can be protected. (*Feiertag v. Reichmann*, 21 Ill.App.2d 215, 157 N.E.2d 818.) The interest of a lawyer which is protected by the Attorney's Lien Act is in the proceeds of the litigation or its settlement. (*Clarke v. Ireland*, *supra*.) Therefore, we are constrained to conclude that Anastos and Matchett had no interest in the M.J.D.M. judgment. Their right was to be paid their fee from the proceeds of the litigation. As to this they had to look to Hamilton Steel Products, if any part of the M.J.D.M. judgment was paid. (*Standidge v. Chicago Rys. Co.*, 254 Ill. 524, 98 N.E. 963.) As against Demaio and M.J.D.M., Anastos and Matchett could recover from them, on proper proof, either the full amount of the contingent fee agreement or on the basis of *quantum meruit*, a reasonable fee for the services they had rendered. This being so, O'Brien owed no duty to Anastos and Matchett. Liability, if any, which O'Brien had for failure to record the judgment, as Anastos and Matchett alleged, was a matter entirely between O'Brien and his clients. It follows that the complaint of Anastos and Matchett against O'Brien, which was predicated on the breach of a duty that did not exist, failed to state a cause of action.

It was the possibility of the ruling that the complaint did not state a cause of action that the trial judge stayed the taking of depositions until disposition of O'Brien's motion to dismiss. Anastos and Matchett now contend that they "[h]ave a fundamental, inherent, inalienable personal, property, procedural, and constitutional right to discovery * * *." They argue that the stay deprived them of a remedy without due process of law in violation of article II, section 2 of the Illinois Constitution and the fourteenth amendment to the United States Constitution.

■■ This contention and argument can only be products of an overtaxed imagination. It is well known among lawyers that wide discretion is given a trial judge to control the taking of discovery. (*People v. Bua*, 37 Ill.2d 180, 226 N.E.2d 6; *Cohn v. Board of Ed. of Waukegan Tp. H.S. Dist. No. 119*, 118 Ill.App.2d 453, 254 N.E. 803.) The power to deny, limit, condition or regulate the taking of discovery so as "[t]o prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression" is conferred on trial judges by Supreme Court Rule 201(c)(1), Ill. Rev. Stat. 1969, ch. 110A, par. 201(c)(1). It has been held that no error is committed when the taking of depositions is stayed until after the motion to dismiss a complaint is heard and decided. *Webster v.*

*Midland Electrical Coal Corporation,* 43 Ill.App.2d 359, 193 N.E.2d 212.
■■ In this case O'Brien moved for a protective order. He supported it with an affidavit in which he said that the burden of attending depositions would interfere with his other professional obligations. He offered to stipulate to the facts which he understood Anastos and Matchett were seeking to discover. Finally, O'Brien said he would, nonetheless, abide by the court's order if taking of depositions were permitted. We believe it would have been offensive to traditional concepts of fair play and substantial justice for the trial court to have compelled O'Brien to submit to the taking of discovery depositions prior to resolution of questions he had raised concerning sufficiency of the complaint. (Compare *Koplin v. Saul Lerner Co.,* 52 Ill.App.2d 97, 201 N.E.2d 763.) Under these circumstances the stay of depositions was proper; no state or federal constitutional right of Anastos and Matchett was violated. Accordingly, the judgment is affirmed.

Judgment affirmed.

STAMOS, P. J., and SCHWARTZ, J., concur.