PROCESS COLOR PLATE COMPANY, INC., *et al.,* Plaintiffs, *v.* CHICAGO URBAN TRANSPORTATION DISTRICT *et al.,* Defendants-Appellee (Keck, Mahin & Cate, Petitioner-Appellant).

First District (1st Division)   No. 83—900

Opinion filed June 25, 1984.

Keck, Mahin & Cate, of Chicago, *pro se* (John M. Betts, Donald G. Mulack, and Philip V. Martino, of counsel), for appellant.

Isham, Lincoln & Beale, of Chicago (A. Daniel Feldman, David Narefsky, and Charles J. Risch, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Petitioner, Keck, Mahin & Cate, a law firm, appeals from a trial court order denying the enforcement of petitioner's attorney's lien served upon the Chicago Urban Transportation District, a municipal corporation. On appeal petitioner raises the following issues: (1) whether the district interfered with contracts between petitioner and

its clients; (2) whether the district's act of settling directly with petitioner's clients rendered the district liable for petitioner's attorney fees; and (3) whether petitioner's attorney's lien is enforceable against the assets of a municipal corporation.

Initially we note that upon motion of the Chicago Transit Authority, a municipal corporation, the Chicago Urban Transportation District, which was abolished as of January 1, 1984, pursuant to Public Act 82—1048 (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 519), was dismissed as defendant-appellee in this action and the Chicago Transit Authority (hereinafter district) substituted in its stead.

The record reveals that in 1970, the district was created to levy taxes on property within the designated district and to use those taxes to operate mass transit facilities within the district. The district collected $16,448,912 from January 1, 1974, to December 31, 1979. During the years from 1975 to 1980, petitioner was retained by numerous taxpayers within the district to file objections to the taxes levied by the district and to obtain refunds of approximately $3.4 million paid by those clients. According to petitioner, the clients each agreed to pay petitioner a sum equal to 20% of the amount recovered by petitioner through suit or settlement. Pursuant to its employment, petitioner filed 51 separate lawsuits against the district. On July 3, 1979, a class-action lawsuit, also seeking to obtain refunds of taxes, was filed against the district. The class action was filed on behalf of all taxpayers with the district including petitioner's clients. Trial of the class-action lawsuit was conducted from September 1981 to February 1982. Following the trial, but before judgment was entered, counsel for the district and for the class plaintiffs conducted a series of settlement conferences. On April 1, 1982, an agreed order was entered providing for the settlement of the class-action suit. The settlement provided for the establishment of a $6.45 million settlement fund from which all fees and costs incurred in the action would be paid. Petitioner's clients were entitled to a total of $1.7 million of the settlement fund in accordance with the amount of taxes they had paid. On May 25, 1982, the court approved the mailing and publication of notice of the proposed settlement to class members. The notice provided that any class member wishing to receive a share of the settlement fund was required to file a statement of claim no later than November 1, 1982. The statement mailed with the proposed settlement notice contained the following release:

"RELEASE

Conditioned upon the proposed settlement becoming effective,

the undersigned hereby releases and discharges all defendants in the above entitled action and all other persons described in the accompanying notice from any and all claims the undersigned may have arising out of or relating to any of the claims alleged in the lawsuit, including but not limited to claims against the CUTD in any tax objection the undersigned may have made or may make."

In response to the notice, 56 requests were received for exclusion from the settlement. None of the petitioner's clients chose to be excluded. On November 3 and 4, 1982, petitioner served the district with its notice of attorney's lien and on November 22, 1982, the district filed a petition to have the lien adjudicated. Subsequently, on December 23, 1982, petitioner filed a petition to enforce its attorney's lien, alleging that the district refused to honor or recognize petitioner's lien in the amount of $440,000, or 20% of the portion of the settlement fund to which petitioner's clients were entitled. Petitioner asserted that the lien should be attached directly to the assets of the district and not to either the $6.45 million total settlement fund or to the $1.7 million portion of the fund to which petitioner's clients were entitled.

██ We first address the issue whether the district interfered with employment contracts between petitioner and petitioner's clients by creating a climate which made it impossible for petitioner to recover any fees for the 51 tax rate protest actions petitioner filed against the district. Petitioner claims that with knowledge of petitioner's tax protest actions, the district nevertheless negotiated, executed and obtained court approval of a settlement in the class-action suit without providing for the satisfaction of petitioner's attorney fees. Petitioner asserts that the district is liable for petitioner's attorney fees under "An Act creating attorney's lien ***" (Ill. Rev. Stat. 1981, ch. 13, par. 14), because the district was a party to the structuring of the settlement. Petitioner maintains that the act is controlling in this case because it provides for the attachment of a lien "to any verdict, judgment or order entered and to any money or property which may be recovered, on account of such suits ***." (Ill. Rev. Stat. 1981, ch. 13, par. 14.) The statute, which was intended to give attorneys a lien which would protect them against any settlements that might be made, would be given effect regardless of whether a suit had been commenced, was pending or had been finally determined. (*McArdle v. Great American Indemnity Co.* (1942), 314 Ill. App. 455, 41 N.E.2d 964.) Moreover, petitioner claims that as here, where a defendant is properly served with notice of lien and then acts in derogation of the

right of the attorney-lienor to reach the proceeds of the litigation or settlement, defendant becomes directly liable to the attorney. (*Case v. Emerson-Brantingham Co.* (1915), 269 Ill. 94, 109 N.E. 671; *Bennett v. Chicago & Eastern Illinois R.R. Co.* (1945), 327 Ill. App. 76, 63 N.E.2d 527.) Accordingly, the district is liable for petitioner's fees.

This case proceeded as a class-action suit the primary purpose of which is to avoid a multiplicity of lawsuits. To advance this purpose, courts of chancery have broad powers to adjudicate all of the claims of the parties before it which arise out of the subject matter of the class-action lawsuit. (*Alter v. Moellenkamp* (1961), 23 Ill. 2d 506, 179 N.E.2d 4.) We cannot envision that the legislature intended that an attorney, with full awareness of a client's voluntary participation in the settlement of a class action involving the same matter claimed in that attorney's lien, and who has the opportunity to assert the statutory lien against the settlement proceeds going to that client and thereby achieving the purpose and effect of the act, should be free to ignore the benefits and proceeds flowing to the client and claim the benefits of the lien in another unrelated fund. The trial court avoided the possible duplication of fees problem in denying petitioner's lien and we think the ruling of the trial court should be given effect and that "An Act creating attorney's lien \*\*\*" is not controlling in this class action. (See *Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 426 N.E.2d 1204.) Moreover, under the facts and circumstances of this case, we see no reason to reach a different conclusion based on petitioner's assertion of prior contractual rights, particularly where petitioner's claim is in conflict with promoting the ends of the class action. The attorney's lien cannot be fairly characterized as unrestricted grants which may be used for whatever purpose desired in a class action.

■ Petitioner's further claim that the district interfered with petitioner's rights under the statute ignores the fact that the settlement was entered into with court approval, was deemed to be in the best interest of all of the members of the class, including petitioner's clients, was approved by the court with knowledge of petitioner's lien and that the overriding purpose of the settlement was to benefit class members, not to interfere with petitioner's attorney's lien. Furthermore, although the settlement order was entered on April 1, 1982, followed by the mailing and notice to the class members on May 25, 1982, it was not until November 3, 1982, that petitioner served notice of the lien on the district. At that time, the district brought the lien to the attention of the trial court, seeking to have the lien adjudicated. Similar actions for adjudicating the lienor's rights were approved by our supreme court in *McCallum v. Baltimore & Ohio R.R.*

*Co.* (1942), 379 Ill. 60, 39 N.E.2d 340. On that basis, we find that the district's actions with regard to the lien were neither improper nor in derogation of any right of the petitioner. Additionally, because petitioner elected not to file any claim for fees against the settlement fund which was created for the purpose of satisfying such claims for fees, petitioner, by its voluntary action, was thereby foreclosed from having its claim for fees adjudicated by the trial court. The trial court was not obliged to create a second fund for the purpose of satisfying any purported attorney's lien merely because of petitioner's assertion of prior contractual rights. We therefore reject the claim that a class-action settlement may be used as a basis to support a claim of interference with prior attorney-client agreements as asserted by petitioner.

It is also contended that the district acted "at its peril" in settling directly with petitioner's clients and thus is liable to pay petitioner's attorney's fees. Petitioner relies on *Bennett v. Chicago & Eastern Illinois R.R. Co.* (1945), 327 Ill. App. 76, 63 N.E.2d 527, in which an attorney recovered fees from a successor attorney who, with notice of the first attorney's lien, nonetheless chose to settle directly with the client. Petitioner also cites *McCallum v. Baltimore & Ohio R.R. Co.* (1942), 379 Ill. 60, 39 N.E.2d 340, in support of its contention. In *McCallum*, the court found that an attorney's lien could be enforced only against a defendant who had destroyed or dissipated the property to which the lien would have attached. Petitioner claims that the district made it impossible for petitioner to collect fees when the district, with knowledge of petitioner's lien, negotiated a settlement providing for payment of fees only to class counsel. The district's actions, petitioner asserts, destroyed the possibility of attaching a lien to any recovery petitioner's clients might have obtained.

At the outset we note that in both the *Bennett and McCallum* cases, the lienee acted in derogation of the lienor's rights following notice of the lien. Consequently, the attorneys were entitled to their fees. Having held in this case that the district did not act in derogation of petitioner's rights, we find the cases may be distinguished from the case at bar.

■ It is a basic principle of law that notwithstanding an attorney's lien, a litigant can settle a case or satisfy and release a judgment without the knowledge or consent of his lawyer. (*Anastos v. O'Brien* (1972), 3 Ill. App. 3d 1015, 279 N.E.2d 759.) By virtue of "An Act creating attorney's lien ***," however, the lienee must stand ready to pay the lawyer that portion of the proceeds which the client agreed to pay the lawyer. (*Anastos v. O'Brien* (1972), 3 Ill. App. 3d

1015, 279 N.E.2d 759); *Case v. Emerson-Brantingham Co.* (1915), 269 Ill. 94, 109 N.E. 671.) However, the interest of the lawyer which is protected by "An Act creating attorney's lien ***" is only in the proceeds of the litigation or its settlement. *Anastos v. O'Brien* (1972), 3 Ill. App. 3d 1015, 279 N.E.2d 759.

▮ Here, it is undisputed that petitioner's clients voluntarily released their individual tax objection suits when they agreed to join the class-action suit. Moreover, petitioner is correct in asserting that the release signed by its clients was not effective until after petitioner served notice of its lien. However, where an action is against a governmental body for the recovery of public funds, the creation of a fund under the control of the court has traditionally been a prerequisite to a fee award. (*Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority* (1972), 51 Ill. 2d 126, 281 N.E.2d 338.) The "common fund" or "common benefit" doctrine allows a party who has conferred a benefit on another through litigation, to recover a share of attorney fees from those who benefit. In order for attorney fees to be awarded, therefore, a fund must have been brought within the control of the court. (*Hamer v. Kirk* (1976), 64 Ill. 2d 434, 356 N.E.2d 524; *Hoffman v. Lehnhausen* (1971), 48 Ill. 2d 323, 269 N.E.2d 465.) In the absence of a common fund, a plaintiff's attorney is not entitled to fees merely because he has conferred a benefit upon members of a class. *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 356 N.E.2d 524; *Kaplan v. Mahin* (1979), 79 Ill. App. 3d 848, 399 N.E.2d 315.

▮ In the instant case, the trial court created a common fund of $6.45 million for the purpose of paying all costs and expenses incurred in the action. Petitioner's clients were entitled to $1.7 million of that fund for the taxes they had paid. Petitioner therefore had two funds against which it could have asserted its lien. Petitioner, however, specifically requested that its lien not attach to either of those funds but instead insisted on being awarded its fees directly from the assets of the district. Although we are reluctant to bar attorneys from collecting fees after rendering valuable service, under the facts and circumstances in this case, we have no alternative but to affirm the circuit court's denial of petitioner's lien since petitioner has elected not to assert its lien against either the common fund or the proceeds recovered by its clients.

The district raises the alternative argument that petitioner's lien is unenforceable against the district, claiming that attorney's liens do not lie against the assets of municipal corporations. We need not reach this alternative argument, however, in view of our holding that petitioner cannot recover its fees from the district.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

McGLOON and GOLDBERG, JJ., concur.