SECOND DIVISION
 November 22, 1996
 (Modified upon denial
 of rehearing)

No. 1-95-4342

AARON S. WOLFF, ) APPEAL FROM THE
 ) CIRCUIT COURT OF COOK
 Plaintiff-Appellant, ) COUNTY, ILLINOIS,
 ) LAW DIVISION.
 v. ) 
 )
AMPACET CORPORATION, a ) THE HONORABLE
New York Corporation, ) JOHN W. GUSTAFSON,
 ) JUDGE PRESIDING.
 Defendant-Appellee. )

 JUSTICE SCARIANO delivered the opinion of the Court:

 Plaintiff Aaron S. Wolff ("Wolff"), an attorney, represented
himself and three creditors in a bankruptcy proceeding and obtained
a ruling allowing his claims and those of his clients against the
bankruptcy estate. Defendant Ampacet Corporation ("Ampacet"), a
New York corporation, was also a creditor of the bankrupt. Though
he had no attorney-client relationship with Ampacet, and although
it was not directly involved in the proceeding, Wolff sought to re-
cover attorneys' fees from Ampacet on a variety of theories, the
gist of which is that Ampacet was able to recover on its claim as
the result of Wolff's actions, and that it would be inequitable to
allow Ampacet to reap that benefit gratuitously.
 The circuit court took the case on cross motions for summary
judgment and rejected each of Wolff's theories of recovery as a
matter of law; it therefore denied his motion for summary judgment
and granted Ampacet's. This appeal followed.

 Background
 The salient facts of the case are undisputed. In September of
1984, Fesco Plastics Corporation ("Fesco") filed for protection un-
der Chapter 11 of the Federal Bankruptcy Code ("the Code"). In its
petition, Fesco listed Ampacet, Wolff, and a number of other credi-
tors, all of whom were considered "deemed-filed" under the Code. 
As such, these creditors were not required to take any further ac-
tion to present their claims in the bankruptcy court.
 In October of 1985, however, the Fesco bankruptcy was convert-
ed into a Chapter 7 liquidation proceeding, and a deadline of Feb-
ruary 6, 1986, was set for the filing of claims against the bank-
rupt estate. Many of the deemed-filed creditors took no action,
believing that their prior status carried over into the liquidation
proceeding. Among this group were Wolff and Ampacet. In April of
1987, the bankruptcy court upheld the trustee's request to bar the
claims of all deemed-filed creditors who had missed the February 6
filing date. This decision would have barred Ampacet's claim per-
manently if no further action were taken.
 Ampacet did not appeal the bankruptcy court's determination. 
Wolff and three other creditors (represented now by Wolff) did opt
to appeal, however. Ampacet's claim was valued at $103,450.30; the
claims of Wolff and the three creditors he represented ("the Lisk
creditors") aggregated approximately $95,000. The Lisk creditors
entered into a contingent fee agreement with Wolff, under which his
fee would be a percentage of any recovery obtained by his client/
creditors if he successfully revived their claims. On July 30,
1990, the U.S. Court of Appeals for the Seventh Circuit reversed
the bankruptcy court and the District Court, holding that the Lisk
creditors' claims were to be considered timely filed for Chapter 7
purposes (In Re Fesco Plastics (7th Cir. 1990), 908 F.2d 240). In
all of these appellate proceedings, Wolff had no direct contact
with Ampacet and did not purport to represent it.
 Based on the Seventh Circuit's decision, in August of 1991,
the trustee reversed himself, honoring the claims of all the deem-
ed-filed creditors of the estate, including Ampacet, Wolff and the
Lisk creditors. Wolff's claim was accordingly paid in conformity
with the Code, as were the claims of the Lisk creditors, and Wolff
received the negotiated contingent fee from those creditors.
 Ampacet had relocated during the period in which Wolff was
prosecuting the appeal, however, and did not learn of the results
until contacted by him. Ampacet thereafter, through attorneys it
had retained, re-instituted its claim and recouped approximately
$65,000 of its $103,450 claim. Wolff attempted to collect an at-
torneys' fee from Ampacet, as well as from other non-Lisk creditors
whose claims had been revived. Wolff's claims were rebuffed,
first by Ampacet and later by the bankruptcy court. Wolff appealed
the denial of his fee request through to the U.S. Court of Appeals
for the Seventh Circuit, which upheld the decision on a technical
ground: because the Code does not confer the power to adjudicate
fee disputes between creditors, the bankruptcy court lacked auth-
ority over the claim. Wolff then filed this action in the circuit
court of Cook County.
 Analysis
 Wolff maintains that his entitlement to a fee from Ampacet is
authorized by the "common fund" doctrine or as a remedy in the na-
ture of restitution. We address these arguments seriatim.
 Wolff's common fund theory of recovery requires an apprecia-
tion of the origins and mechanics of that remedy. The doctrine
was created by the courts as an equitable compromise to address
situations in which a plaintiff bestows a benefit on one or more
parties who did not solicit the benefit, and who therefore would
not otherwise be obligated to pay for it. The common fund doctrine
was first recognized by the U.S. Supreme Court in Trustees v.
Greenough (1881), 105 U.S. 527, and more recently in Boeing Co. v.
Van Gemert (1980), 444 U.S. 472. In Boeing, the Court explained
the doctrine thus:
 "a litigant or lawyer who recovers a common fund for the bene-
 fit of persons other than himself or his client is entitled to
 a reasonable attorneys' fee from the fund as a whole." (444
 U.S. 472, 478).
(See, Domenella v. Domenella (1987), 159 Ill.App.3d 862, 867, 513
N.E.2d 17). Our Supreme Court, in recently addressing the doc-
trine, stated:
 "The common fund doctrine permits a party who creates, pre-
 serves or increases the value of a fund in which others have
 an ownership interest to be reimbursed from that fund for lit-
 igation expenses incurred, including counsel fees ... It is
 now well-established that 'a litigant or a lawyer who recovers
 a common fund for the benefit of persons other than himself or
 his client is entitled to a reasonable attorney's fee from the
 fund as a whole.' Boeing Co. v. Van Gemert, 444 U.S. 472, 478
 ... The underlying justification for reimbursing attorneys
 from a common fund, as explained by the United States Supreme
 Court in three early cases, is that, unless the costs of liti-
 gation are spread to the beneficiaries of the fund, they will
 be unjustly enriched by the attorney's efforts" (Scholtens v.
 Schneider (1996), --- Ill.2d ---, --- N.E. 2d --- (docket num-
 ber 79686, filed September 19, 1996, slip opinion, p. 8; cita-
 tions deleted)).
The crux of Wolff's claim is that, through his efforts in pursuing
the Lisk creditors' claims, he vindicated the rights of the remain-
ing deemed-filed creditors such as Ampacet, and that it would be
unfair for Ampacet to reap where it has not sown. Accordingly, he
seeks an order compelling Ampacet to pay him for his efforts.
 There is a strong element of equity in Wolff's argument. The
record supports his assertion that, but for his efforts, Ampacet's
claim would have been permanently barred. The claim runs aground
on the shoals of two infirmities: (a) the circuit court's jurisdic-
tion over Ampacet is insufficient for the application of the common
fund doctrine; and (b) the basis for Wolff's recovery runs afoul of
Illinois law.
 The equitable component of the common fund doctrine is the un-
fairness inherent in forcing one plaintiff to pay the full cost of
the litigation when there are others who gain the same benefit. It
is for that reason that the doctrine allows the court to decree an
equitable sharing of the burden of attorneys fees among all the
parties who benefit. As the Court stated in DeBruyn v. Elrod
(1983), 121 Ill.App.3d 290, 292, 459 N.E.2d 971:
 "The 'common fund' or 'common benefit' doctrine allows a party
 who has conferred a benefit on another through litigation to
 recover a share of attorneys' fees from those who benefit."
 (Emphasis supplied).
(See also, Process Color Plate Co. v. Chicago Urban Transportation
District (1984), 125 Ill.App.3d 885, 891, 466 N.E.2d 1033). The
attorney who prosecuted the claim does not recover a full, separate
fee from each of the benefitted parties; instead, he recovers a sin-
gle fee, but the payment of that fee is parceled among a larger
group in the interests of fairness. The Scholtens Court recognized
this fact, as witness the Court's use in its opinion, of terms like
"reimbursement," and how it speaks of a singular "attorney's fee
from the fund as a whole."
 It is well-established under Illinois law that "if no fund has
been placed under the control of the court, then the court lacks
authority to award fees" (Client Follow-Up Co. v. Hynes (1982), 105
Ill.App.3d 619, 627, 434 N.E.2d 485; Hamer v. Kirk (1976), 64 Ill.
2d 434, 440-41, 356 N.E.2d 524). This requirement is founded on
the purpose of the doctrine itself: to allow a court to pro rate
the costs of the litigation over all the beneficiaries (Scholtens,
slip opinion, p. 8). 
 Here, Wolff brought only two of the hundreds of beneficiaries
before the court. Whatever the merits of Wolff's claim, at no
time was the fund ever placed under the control of the circuit
court. The funds used to pay the deemed-filed creditors were, at
all times, under the jurisdiction of the bankruptcy court. Thus,
it would be impossible for the circuit court to fashion a reasona-
ble apportionment of the fee among the hundreds of parties who be-
nefitted from Wolff's efforts. Those parties, it bears repeating,
were not before the circuit court. Wolff's complaint, to be sure,
gave the circuit court jurisdiction over Ampacet, and an appropri-
ate money judgment could have been entered against it if a valid
theory of recovery were advanced against it, but the common fund
doctrine is not one of those theories.
 Wolff's theories based on restitution do not suffer from these
particular defects. He organizes those claims into two categories:
restitution based on unjust enrichment and restitution based upon
quasi-contract. In substance, Wolff argues that (a) he "performed"
on behalf of not only the Lisk creditors, but for Ampacet as well,
and that as a consequence Ampacet would be unjustly enriched if it
were allowed to retain the benefit of its bankruptcy claims gratui-
tously; and (b) the courts should imply a contract between Ampacet
and Wolff to allow him a recovery. Though Wolff treats the two as
separate claims, they are historically identical: both unjust en-
richment and restitution are terms descriptive of a form of recov-
ery dependent on the existence of an independent theory sounding in
either tort (for example, fraud) or contract (for example, quasi-
contract). Wolff's theory is plainly grounded upon contract.
 Wolff's arguments are unavailing because of the entire absence
of any contractual basis for the claims; since he alleges no torti-
ous conduct, we shall focus only on the "quasi-contract" aspects of
his theory. Contracts are recognized as bargained-for exchanges:
 "A contract, by ancient definition, is 'an agreement between
 competent parties, upon a consideration sufficient in law, to
 do or not do a particular thing' *** a subjective understand-
 ing is not requisite. It suffices that the conduct of the con-
 tracting parties indicates an agreement to the terms of the
 alleged contract." (Steinberg v. Chicago Medical School
 (1977), 69 Ill.2d 320, 329, 331, 371 N.E.2d 634)).
(See also, Wagner Excello Foods v. Fearn International, Inc.
(1992), 235 Ill.App.3d 224, 229, 601 N.E.2d 956 ("To be enforcea-
ble, a contract must show a manifestation of agreement between par-
ties")). In the context of this case, restitution and unjust en-
richment must trace their origins to basic contract law concepts
(People ex rel. Hartigan v. E & E Hauling, Inc. (1992), 153 Ill.2d
473, 497, 607 N.E.2d 165 ("The theory of unjust enrichment is based
on a contract implied in law"); Sobel v. Franks (1994), 261 Ill.
App.3d 670, 682-83, 633 N.E.2d 820).
 Wolff acknowledges that his entire performance for the Lisk
creditors in this matter (appealing to the District Court and then
to the Seventh Circuit) was done without Ampacet's knowledge. He
also admits that when he approached Ampacet to offer his services
after he had revived the claims, it refused to hire him; indeed, Am-
pacet retained other counsel when it reinstated its claim in the
bankruptcy court. Ampacet cannot be deemed to have in any way en-
tered into a contractual relationship when it was ignorant of
Wolff's performance, expressly rejected his attempt to have it re-
troactively validate that performance, and hired someone else in-
stead.
 We are further persuaded that the circuit court's judgment was
correct in light of our Supreme Court's analysis in HPI Healthcare
Services Inc. v. Mt. Vernon Hospital (1989), 131 Ill.2d 145, 545
N.E.2d 672. There, the Court divided unjust enrichment cases into
two categories: (a) those where the benefit plaintiff seeks to re-
cover from the defendant originated with the plaintiff; and (b)
those where the benefit plaintiff seeks has been transferred to de-
fendant by a third party (131 Ill.2d 145, 161). In this case,
Wolff's claim falls in the second category: it was the decision of
the bankrupt estate's trustee to reinstate the claims not only of
the Lisk creditors, but those of all the deemed-filed creditors as
well, and Wolff seeks payment from the sum transferred to Ampacet
by the trustee. 
 The HPI Court limited the recovery of an unjust enrichment de-
rived from third parties to three situations:
 "courts have found that the retention of the benefit would be
 unjust where (1) the benefit should have been given to the
 plaintiff, but the third party mistakenly gave it to the de-
 fendant instead *** (2) the defendant procured the benefit
 from the third party through some kind of wrongful conduct ***
 or (3) the plaintiff for some other reason had a better claim
 to the benefit than the defendant" (131 Ill.2d 145, 161-62).
None of these criteria is met here. Wolff does not claim that Am-
pacet's payment should have been given to him. We reiterate that
he does not allege any wrongful conduct on Ampacet's part. Nor can
Wolff assert a superior claim to the money; instead, at all times
Wolff assumed the validity of Ampacet's claim. He thus cannot meet
the test enunciated in HPI.
 The logic employed in HPI eviscerates Wolff's quasi-contractu-
al theory. "Quasi-contract" is a term of art for contracts implied
in law (Zadrozny v. City Colleges (1991), 220 Ill.App.3d 290, 295,
581 N.E.2d 44; Daley v. G'Sell (1981), 102 Ill.App.3d 548, 551, 430
N.E.2d 556). And as noted, here there is no contract, implied or
otherwise. There was no legally cognizable relationship between
Wolff and Ampacet when Wolff performed for the Lisk creditors. As
such, there could be no quasi-contract upon which to base any re-
covery. 
 None of Wolff's theories survives scrutiny. The judgment of
the circuit court must therefore be affirmed.
 Affirmed.
 HARTMAN, P.J., AND DiVITO, J., CONCUR.